## WILSON v. PATRICK *et al.*

1. Mortgage: ABSOLUTE CONVEYANCE. A deed absolute on its face, which was intended merely as security, will, in equity, be declared a mortgage.

2. —— INADEQUATE CONSIDERATION: EVIDENCE. That the consideration for the conveyance was grossly inadequate, is a strong circumstance to support the claim that it was intended to operate as a mortgage instead of absolutely.

3. —— So, also, the fact that the grantor remained in possession of the premises, is a fact to be considered as tending in the same direction.

4. Evidence: DECLARATIONS. In an action against heirs, involving the title to real estate, the declarations of their ancestor to the effect that he did not own the lands, is admissible against them, but his contrary declarations are not admissible in their favor.

*Appeal from Iowa District Court.*

THURSDAY, JULY 25.

ACTION in chancery. The relief asked is, that the legal title of certain lands held by defendants be conveyed to plaintiff; that an account of the sales of certain other lands held by them under the same title, which had been before the commencement of this suit sold and conveyed, be taken, and also that an account of the rents and profits of all of said lands be had; that judgment be rendered for the amount due plaintiff, and that he have proper process to recover the possession of the lands which have not been

conveyed by defendants. Upon the final hearing on the merits, plaintiff's petition was dismissed, and he appeals to this court. The facts appear in the opinion.

*Martin, Murphy & Suksdorf* for the appellant.

*Edmonds & Ransom & Hedges* for the appellees.

BECK, J. — The decision of this case turns upon the facts. In the view we take, no disputed question of law

1. MORTGAGE: absolute conveyance. arises. We will proceed to give a statement which will set forth the facts, as we find them from the evidence, embodied in the record. The evidence is voluminous, and a great amount of matter is contained in the depositions that is irrelevant and no little that is incompetent. We will not undertake to discuss, at great length, the facts and point out all the reasons that lead us to the conclusions which we have reached. A few main and leading grounds of the decision will be stated; these, we believe, will be sufficient to demonstrate the correctness of our conclusions.

In 1857, plaintiff conveyed to John Blackburn four hundred and twenty-two and thirty-seven one hundredths acres of land in Iowa county. They had been entered by him about three years before. Prior to this conveyance he had made considerable improvements thereon, consisting of a house, fencing and breaking, and some others of minor importance. About five years after the date of this conveyance, John Blackburn executed a deed for the lands to Joseph A. Blackburn. In 1862, plaintiff, with his family, removed from Ohio, where he had before resided, and where the other parties just named lived, and went into the occupancy of the lands. He continued in their possession for several years and made certain other improvements. Defendants, in 1866, became possessed thereof as

the heirs of Joseph A. Blackburn, who in that year died. The manner in which they obtained possession, will be hereafter stated.

Plaintiff now claims that the conveyance to John Blackburn was made by him to secure a certain indebtedness against him, or rather to secure Joseph A., on account of his indorsement of certain promissory notes which he had before executed; that the deed was made to Joseph A. to carry out the purpose of the security, and that he had paid to Joseph A., before his decease, the amount due upon the promissory notes which had been paid by him to the holders thereof. The question of fact to be determined relates to the character of the deed from plaintiff to John Blackburn, whether it was an absolute conveyance, or in the nature of a mortgage. We will now proceed to state the main points in the evidence, and the undisputed collateral facts bearing upon the question before us.

I. Joseph A. Blackburn was the father-in-law of plaintiff. The conveyance for the lands was made to John, his brother, on account of the fact that there was a disagreement between Joseph A. and his wife (a second wife), which had resulted in a proceeding for a divorce, which was then pending. In December, 1862, the divorce suit having been terminated, John conveyed the land to Joseph A. Plaintiff at this time had some other property, but he was involved in debt. While plaintiff lived in Ohio he paid the taxes upon the land, and continued to make improvements upon it after its conveyance to John Blackburn. After his removal upon the land he laid a part of it out into town lots. The town was called Wilson — the name afterward being changed to Victor. He bargained the right of way over the lands to the Mississippi & Missouri River Railroad, now the Chicago, Rock Island and Pacific, and sold, and caused to be conveyed, a part of the lands and certain town lots, to different parties. He expended a considerable amount in procuring the location of a sta-

tion of the railroad upon the lands, and in building a station house, which he found necessary to do in order to secure the location of a station. The deeds for land and lots sold by him were, in some cases, made under a power of attorney, from Joseph A. Blackburn. In 1864, plaintiff was drafted into the army and served near a year. Two months after his return from the army he became insane, and was sent to the hospital for the insane, at Mt. Pleasant, where he remained for more than two years, returning in October, 1867. This suit was commenced in August, 1869. Ten per centum of the proceeds of the lands and lots sold by plaintiff, excepting lands conveyed to the railroad and parties connected therewith, for which no consideration, other than the location of the railroad and station on the lands, was received, was paid by plaintiff to his father-in-law, the balance appropriated to his own use. After plaintiff had been drafted, his father-in-law appointed another attorney in fact, who sold lots to the value of over $1,400 ; of this sum, over $600 was remitted to Joseph A. Blackburn, the balance used in the payment of taxes, and for services of the agent and the support of plaintiff's family. Joseph A. died in January, 1866. The heirs, or rather devisees, for he had made a will, after his death continued the sale of lots through one of their number, John A. Blackburn, who held a power of attorney from the others for that purpose. The amount of sales was about $4,000. A proper share was paid to plaintiff's wife.

The notes which Joseph A. had indorsed for plaintiff were for less than $1,000. He did not pay them for some time after the deed was made to his brother. At Joseph A.'s decease, the notes were found among his papers without being defaced or canceled.

Two of the devisees have, since the decease of Joseph A., died, and the executors of both are made parties. One of them devised her interest in the land to a sister·

The executor of Joseph A. is also a party having, upon his own motion, been allowed to defend.

No consideration was paid by John Blackburn for the land, and he held the title for the use of Joseph A. who is admitted, on all hands, to have possessed a great affection toward his children, and was an upright and just man. He was possessed of considerable property.

The foregoing are undisputed facts of the case, that are not attempted to be contradicted or denied by either party to the suit.

II. We find that the preponderance of the evidence establishes the following facts : The lands, when the deed from plaintiff to John Blackburn was made, were worth at least $3,000. The improvements were worth $1,000 or $1,200. The deed was made in May, 1857, before the financial troubles of that period began. The price above stated ($3,000), is below the average of the estimates of witnesses.

Plaintiff left Ohio (after he had deeded, etc., the land), for the purpose of settling upon the land and of making his home there. Before plaintiff entered the army, neither John nor Joseph A. Blackburn exercised any acts of ownership over the land in controversy. The sales were all made by plaintiff for prices and on terms approved by him. He laid off the town, procured the location of the railroad and railroad station upon the lands without control from Joseph A. These things were all done after the conveyance from John. The deed for the land and lots sold, were executed by Joseph A. without hesitation and without inquiry, as to the terms or prices of the sales. He visited the lands but once, and did not then hold himself out as the owner. He informed two or three parties, who made inquiry in regard to purchases they desired to make, that they should buy of. plaintiff, and in one instance, when asked if he owned the land, replied that " he could not say that he did."

Wilson v. Patrick.

A few months after the conveyance to John Blackburn, plaintiff applied to him to execute a written agreement to reconvey the land upon payment of the debts for which Joseph A. was security, claiming that the land was deeded to him for the purpose of securing his father-in-law.

The foregoing facts are established by great preponderance of evidence, if not without contradiction; defendants do not, however, admit that they are supported by the testimony.

III. There is another class of facts that we think are sufficiently established, but the witnesses giving evidence thereof, are contradicted by others and in some instances attempts are made to destroy the effect of their testimony, by attacks upon their characters They are as follows: Plaintiff paid Joseph A. Blackburn in full, the amount of the notes. Joseph A. frequently stated that the title was held by him as security. A written contract to reconvey the lands to plaintiff, but unsigned, of the same date, in the same hand, and written with the same ink and on the same kind of paper, was found with the deeds given for the land and the notes upon which Joseph A. was security, among his papers after his death. This contract is of the purport and effect of the agreement which plaintiff requested John Blackburn to execute a few months after the land was conveyed to him.

2.—— Inaquate consideration: evidence.

There are some other minor facts of this character which it is not important should be stated. The evidence touching all of this class of facts, as has been stated, is conflicting, and some of the witnesses of plaintiff are to some extent discredited. But these witnesses are corroborated by others who are unimpeached and by circumstances, so that their testimony cannot be disregarded. *Calanan & Ingham* v. *Shaw*, 24 Iowa, 441.

Two witnesses, John A. Blackburn and plaintiff's wife,

testify positively and circumstantially to the fact that on frequent occasions Joseph A. Blackburn informed them that he held the land as security, and when plaintiff paid the indebtedness the lands were to be reconveyed to him, and that after plaintiff's return from the army, their father (Joseph A.) stated that plaintiff had paid the indebtedness in full. If these witnesses are to believed, their testimony settles beyond a doubt that plaintiff's version of the transaction between himself and father-in-law is correct. Against Mrs. Wilson's evidence, nothing can be said to discredit it, other than that she is not a women of strong mind ; that at a former period in her life she had been insane and, for a time, was in an asylum for the treatment of her mental disorder.

It is not, however, claimed that her mind was, when her evidence was given, or for years before, unsettled. Her testimony exhibits no evidence of weakness of memory, further than is common to all. She herself, while admitting that her memory may be in a degree affected, speaks very positively and confidently of the facts she narrates, and is clear in her memory in regard to them. While not exhibiting that intelligence which some of the other witnesses on both sides possess, she is far from exhibiting such ignorance or weakness of mind as leave doubts in regard to the truthfulness of her evidence. She is, as it is apparent from her evidence, an honest, good woman, and this character is cheerfully and frankly accorded to her by defendant's counsel.

Against John A. Blackburn several transactions and circumstances are given in evidence, which are certainly calculated to justify suspicions as to the reliability of his evidence. But they are not of that character as to entirely destroy its credibility, even were it unsupported. The most serious charge against him is the fact that, while plaintiff was in the hospital at Mount Pleasant, he acted as the agent of the other heirs, holding a power of attorney from them, and sold and conveyed a large number of

Wilson v. Patrick.

the lots, accounting to the heirs for the proceeds, thus making himself a party to transactions in fraud of plaintiff's rights, and securing himself a part of the fruits of such fraud. If he knew at the time, which he now swears he did, that the lands were plaintiff's, his conduct is incapable of being reconciled with honesty and just dealing. But if this fact would destroy his evidence, upon the same grounds we would be required to disregard the testimony of all accomplices in fraud and crime. We are required, however, to receive their testimony, on the ground that one who shows a disposition to turn from his evil ways, ought not to be denied the privilege and right, and permission to discharge the duty of making amends for the wrong he has done, by the statement of the truth in regard thereto. Other matters, tending to throw suspicion upon this witness, are either not sustained by the evidence, or are, to a great extent, explained away. But, considering the evidence of these witnesses in the light of all the corroborating facts and circumstances, we cannot refuse to give it credit. The corroborating facts are as follows: The admitted character for integrity and justice possessed by Joseph A. Blackburn, together with his kind and affectionate disposition toward his children, renders it likely that such a man would be unwilling to take from a poor, unfortunate son-in-law, one, too, whose habits were likely to render him unfit to provide a certain and competent support for his family, property of the value of $3,000 or more to pay a debt of less than $1,000 ; an honest, just man would not, for a moment, contemplate the commission of such an act of oppression and injustice. Again, if Wilson be the selfish, dishonest man that defendants represent him to be, he would not be inclined to give such an advantage to any one. If he be, on the other hand, a man of average goodness and common ability, he would not, out of a sense of justice to himself and family, do such a thing as sacrifice valuable property in that way. It is not pretended that any coercion was practiced by his

father-in-law to compel him to convey the land. The rule is recognized by the authorities, quite uniformly, that when the question is to be determined whether a sale and conveyance be absolute, or only intended as security, the fact that the consideration is grossly inadequate is a strong circumstance, though not conclusive, in support of the claim that the deed was intended to operate as a mortgage. *Trucks* v. *Lindsey*, 18 Iowa, 504; *Holmes* v. *Grant*, 8 Paige's Ch. 243; *Conway* v. *Alexander*, 7 Cranch, 268; *Morris* v. *Nixon*, 1 How. 126; *Russell* v. *Southard*, 12 id. 139; *Davis* v. *Stonestreet*, 4 Ind. 101; *West* v. *Hindsey*, 28 Ala. 226; *Vernon* v. *Bethell*, 2 Edw. Ch. 110; *Oldham* v. *Holly*, 2 J. J. Marsh. 114; *Kemp* v. *Eays*, 7 Ired. Eq. 167; *Steel* v. *Black*, 3 Jones' Eq. 427; *Crews* v. *Treadwell*, 35 Ala. 334; *Selks* v. *Sealcup*, 7 Ired. 13; *Burley* v. *Phelps*, 2 W. & M. 436.

The fact that the grantee in a deed remained in possession of the lands is a fact to be taken into consideration in determining whether the deed was absolute or intended as a mortgage. This doctrine is recognized by several of these authorities.

The evidence of plaintiff was taken, and is in the record. Defendants object to its consideration in the case on the grounds that, not only the executor of Joseph A. Blackburn is a defendant, but also, because the executors of two heirs who are deceased, are joined as defendants. They base their objection upon Revision, section 3982, which prohibits parties to suits testifying when the adverse parties are executors. Without passing upon the question here presented, we have considered the case without regard to the evidence of plaintiff, and have given it no weight. In our opinion, the conclusion we have above announced, is incontestable without his testimony. We, therefore, do not find it necessary to pass upon the question of law here presented.

Wilson v. Patrick.

Defendants introduced evidence of the statements of Joseph A. Blackburn to the effect, that he owned the land absolutely. This evidence is 'clearly inadmissible. Declarations made by him in support of his absolute interest in the lands may not be received, while admissions to the contrary effect are competent evidence. We have not, therefore, considered evidence of his declarations against plaintiff's interest. The evidence of this character, it may be remarked relates to conversations in which he said the land belonged to him, or in which he called it his land, etc. These conversations or declarations are extremely loose and uncertain, and many of them really amount to nothing. They, however, constitute the great body of defendant's evidence, upon which they support their title.

*4. EVIDENCE. declarations.*

There are many other facts and circumstances bearing upon the main question in the case of considerable weight, and tending to support our conclusions. We think it unnecessary to refer to them more particularly; in our opinion, the facts and circumstances are amply sufficient to make out such a case, which we admit must be strong, clear and satisfactory, as to authorize us to regard the conveyance of the land by plaintiff as a simple security. Defendants stand in the place of their devisor, and are entitled to no rights not held by him. We are, therefore, bound to decide that the equitable title of the lands in controversy is held by them in trust for plaintiff; that the debt to secure which the deed was made, has been paid. Defendants must, therefore, be required to convey the legal title of the land to plaintiff.

Reversed.

BECK, Ch. J. — After the opinion in this case was announced and filed, the defendants, within the time allowed by the rules of this court, filed their petition for a rehearing. Upon full consideration thereof and of the reply thereto by the plaintiff's counsel, and, after a careful

re-examination of the entire case, we have become assured of the correctness of the conclusion reached upon the main fact and announcement of our former opinion, to wit, that the conveyance of the land in controversy made by the plaintiff to the defendant's devisor, Joseph A. Blackburn, deceased, was in fact and in law a mortgage, and not an absolute conveyance, and that the plaintiff has the right to redeem the property from the said mortgage. The judgment of the district.court must, therefore, be reversed. But, we modify our former conclusion and opinion, in so far as it holds that the mortgage debt has been fully paid; whether or not it has been paid, we do not now determine.

The evidence in the case tends to show that certain of the defendants acquired, by purchase or compromise from their co-defendant, John Blackburn, a right to a part or all of his interest in the property; that portions of the property have been sold to third persons, who purchased in good faith for value, and without notice of the fact that the instrument in controversy was a mortgage, and that the purchase-money paid for such portions had been received in whole or in part by the defendants.

The cause will be referred to a referee to take the testimony and report the same, together with his finding of facts thereon, and upon the evidence already taken, and, also, his conclusions as to the law upon the following questions:

1. Have the defendants, either by themselves or in connection with the plaintiff, purchased the interest of their co-defendant, John Blackburn, in the property in controversy; and if so, when; and did they purchase the same in good faith for a valuable consideration without notice of plaintiff's claim?

2. What was the amount of the indebtedness intended to be secured by the mortgage; how was it evidenced; when did it become due, and what rate of interest did it bear?

3. How much has been paid upon it; when, and in what manner?

4. What portions of the property have been sold; when; to whom; at what price, and were the purchasers *bona fide* and without notice of plaintiff's claim?

5. Who has received the purchase-money; state the amount received by each and when?

6. State the taxes; by whom, and when, paid?

7. State the accounts of both plaintiff and defendants?

It is ordered that a copy of this supplemental opinion be at once forwarded by the clerk to the counsel of the respective parties, who are required to agree upon a person to act as referee; or, if they fail to agree, each will name one or more persons in writing to the court, on or before the 24th inst.; from such names, or others, a referee will be selected and appointed.

The referee will enter upon the discharge of his duties on the first day of May; will complete the taking of evidence on or before the 10th of June; will make his report by the 17th of June, and the parties will take and file the exceptions, if any, to the report by the 25th day of June.

Per CURIAM. — The opinion in this case was filed on the 28th day of July, 1871, reversing the judgment of the district court. Subsequently a petition for a re-hearing was filed, and a reply ordered to it, which was also filed. Upon consideration thereof, the original opinion was so modified as simply to hold that the conveyance of the land in controversy, by the plaintiff to the defendants' ancestor, though absolute in form, was, in fact, only a mortgage; and the other questions, respecting the amount of the mortgage debt, the payments thereon, the sale of portions of the land to third parties, the title such third persons acquired, and the proper application and distribution of the proceeds of such sales, were referred to a referee, to take further proof and to report his conclusions upon the questions, founded upon all the evidence in the case.

Upon the coming in of that report, exceptions thereto were filed by the defendants. The report and exceptions are on file, and need not be here set out. In our opinion, the exceptions to the report, so far as they relate to the amount found due from the defendants, severally, to the plaintiff, are well grounded and are sustained. It is only necessary for us to state our further views in the form of a final judgment, which we do as follows:

And now, on this 25th day of July, 1872, this cause coming on for final judgment in this court, it is ordered, adjudged and decreed, that the conveyance, though absolute in form, as made by George W. Wilson and wife to John Blackburn, of date May 20, 1857, was, in fact and in law, a mortgage only; that it was made to secure certain notes, made by said Wilson to certain persons, upon which one Joseph A. Blackburn was surety, etc., as found and stated by the referee; that, by payments made by said plaintiff to said Joseph A. Blackburn, in his life, and by payments made to the defendants, who are his heirs and devisees, since his death, by means of the sales of portions of said land, the whole of said mortgage debt has been paid and satisfied; that, under all the facts and circumstances of the case, and the manner in which the proceeds of such sales of portions of the land were divided and received by and between the plaintiff's wife and the defendants, the plaintiff is not entitled, in equity, to recover any thing therefor; that the defendant, W. M. Eddy, having advanced, pending this action, $169.28, to redeem the land from tax sale, is entitled to recover that sum, with its interest, from the plaintiff, and the same should be a lien on the land until paid.

The absolute legal title to the land in controversy, being that embraced in the conveyance aforesaid, is now fully confirmed and settled in the plaintiff, except as to such lots and portions as had been sold to third persons, prior to the commencement of this action, the title to which

will remain quieted in such persons and their grantees. The defendant, W. M. Eddy, will have and recover of and from the plaintiff, George W. Wilson, the sum of $197.48, with six per cent interest from this date, and may have execution therefor, it being for redemption money paid by him during the pendency of the action, to redeem the land from tax sale, together with the interest on such sum to date. Each party — the plaintiff and the defendants, respectively — will pay their own costs in the district court. The plaintiff, who is the appellant, will recover of the defendants the costs of the appeal taxed at $———, and may have execution therefor.