The Chicago and Alton Railroad Company

*v.*

Andrew Rush.

1. Negligence—*on part of plaintiff contributing to his injury.* Where a brakeman, in uncoupling a combination car to be left on a switch, which has a railing, instead of remaining on such car, as it was his duty, gets

upon a flat car next to it, and, in consequence of the jerk caused by the putting on steam to start the train, is thrown off and run over, his own carelessness and negligence will be such as to preclude him from recovering for the injury.

2. Same—*of fellow servant.* It is a well settled doctrine, that a railway company is not responsible to its servants or agents for an injury occasioned by the negligence of fellow-servants while acting in the same service, when such other servants are competent, or the company has no notice to the contrary.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Mr. Charles P. Wise, for the appellant.

Messrs. Gillespie, Happy & Coppinger, for the appellee.

Mr. Chief Justice Sheldon delivered the opinion of the Court:

The circumstances giving rise to the present suit were, that the plaintiff below had been, for some months, in the employ of the railroad company, as a brakeman on a way freight train. On the 14th of August, 1871, at Carlinville, while the train was making a running switch, the plaintiff, as such brakeman, was engaged in cutting off or detaching the car which it was intended to leave on the side track. The hind car to be detached was a combination car (a box car that can be used for cattle or freight either); the next car to it was a common flat car. Plaintiff, in uncoupling the cars, stood on the flat car and was thrown off, and the detached car ran over his foot, crushing it so that it had to be amputated above the ankle.

There were two counts in the declaration. The first charging that the employee in charge of the switch, being incompetent, negligently and carelessly signalled the engineer to put on steam and increase the speed of the train, before plaintiff gave him any signal so to do, when he should have waited for such signal; that the engineer increased the speed of the train without any notice to plaintiff, and by means of the sudden starting of the train plaintiff was thrown from the car and received the injury.

The second count charges the defective coupling of the cars as the cause of the injury. The plaintiff recovered below, and the defendant appealed.

The plaintiff states the manner of the injury thus: " I was on the platform of second car to the last, was pulling the pin (which fastened together the cars), and Thomas Dooley was pulling the switch; it was his place to wait till I gave him a signal to go ahead; instead of doing that, about the time he thought I was ready he gave the signal to go ahead; the engineer opened the engine out, and he had the slack of five or six cars, and .it jerked me down on the track and the wheel passed over the left foot;"—" had made running switches before; knew that when the slack was taken up it would cause a jerk, but didn't think it would be such a tremendous jerk as it was." " When I went to pull the pin it was tight; it was a new car, and I couldn't get it up in time; if I could have got it up in time it would have been all right, but the pin was so tight in the draw-head that I couldn't get it up for some time; the car was one belonging to the company; never had operated on it before." " I was down on one knee; I tugged at the pin; about the time I had it up Dooley gave the order to go ahead."

The evidence shows, that in making a running switch, after the train has obtained the requisite speed the engineer shuts off the steam; that this causes the train to slack and enables the brakeman to pull the pin and detach the car, as soon as which is done, the engineer lets on steam and starts the train suddenly, taking up the slack, causing a sudden jerk. The plaintiff was acquainted with all this. The evidence shows that there was nothing whatever on the flat car to hold on to, to save plaintiff from being thrown off the car by the jerk; but that the end of the combination car (the end next to plaintiff and the flat car) had on it a railing to hold on to, a brake timber and two grab irons, to any of which plaintiff could have held on; that these things are put on such cars for the purpose of holding on to when uncoupling them.

It was shown by the testimony, that the proper place for the

plaintiff, on this occasion, for his own safety, was on this combination car, the one that was detached; and that *that was his proper place* for the further reason that there should always, in making a running switch. be a man on the car which is cut off, to control it so as to avoid doing injury.    It appears that the car which was switched off here would cross over two streets on the side track to reach its destination.    Plaintiff, it is true, testifies that the detached car, in running, would not cross a street; that there was no street there; and that the rule in regard to taking care of the hind car depends upon the grade of the road; if level, they let it go in without anybody; if down-grade, a man goes on it; that it was level there.    But he is corroborated by no one else, and the clear weight of testimony is as before stated.    And the same observation may be made in reference to some particulars in other matters spoken of as shown by the evidence.

Under the testimony, plaintiff should have stood on the car which was to be cut off when he uncoupled the cars, and have remained on it, to control it, until it reached its destined place. If he had done so he would have enjoyed the use of the means which would have protected him against being thrown from the car and receiving his injury.

Taking the unnecessary and imprudent position he did upon the flat car, where there was nothing to hold to, to save him from being thrown off, was the occasion of the accident, and the injury received must be viewed as the result of his own want of proper care and neglect of duty, disentitling him to any action therefor.

The person in charge of the switch, through whose carelessness in giving the engineer the signal too soon to start the train, plaintiff alleges the injury to have been caused, was Thomas Dooley, a fellow brakeman with plaintiff.    It is the well settled doctrine, that a railroad company is not responsible to its servants or agents for an injury occasioned by the negligence of fellow servants while acting in the same service. *Toledo, Wabash and Western Railroad Co.* v. *Durkin*, 76 Ill. 395, and cases there cited.    There was an unsuccessful at-

tempt to bring this case within a qualification of the rule, in showing a want of the use of due care and diligence on the part of the company, in the employment or retention of Dooley as a competent brakeman. The most there appeared in this regard was, that he sometimes got intoxicated, and this testimony came principally from the plaintiff himself. He admits he never reported it to the company. Such knowledge on his part, and failure to report and make objection, would preclude him from making the alleged fault a ground of complaint. *St. L. and Southeastern Railroad Co.* v. *Britz*, 72 Ill. 256; *Kroy* v. *Chicago, Rock Island and Pacific Railroad Co.* 34 Iowa, 362; Shearm. and Redf. on Neg. § 94; *Camp Point Manufacturing Company* v. *Ballou*, 71 Ill. 418. He would be deemed to assume the risk therefrom.

There was no evidence that Dooley was ever intoxicated while on duty, and no pretense that he was so on the occasion of this accident, but evidence tending to show the reverse.

The general testimony was, that he was an exceptionally good brakeman.

We see nothing in the evidence to take the case out of the general rule of the non-liability of the principal to a servant for an injury caused by the negligence of a fellow servant.

As regards the coupling to the cars, the testimony was, that it was the "Potter coupling," the best one in use, and that it was in good order at the time. The only objection pretended was that stated by plaintiff, that the pin was tight and hard to get out, which is explained by the car being new, and the pin not working, perhaps, quite as easily as if it had been used some and worn. Besides, according to plaintiff's own statement, the coupling was not the proximate cause of his injury. He says: "About the time I had it (the pin) up, Dooley gave the order to go ahead;" showing that he did not fall off while trying to uncouple the cars; that he had uncoupled the car, it perhaps taking him a little longer time than it would have done if the pin had not worked tight. But Dooley gave the signal too soon to the engineer; he should have waited until plaintiff gave him, Dooley, the signal.

The injury was occasioned by the mistake of Dooley in giving the signal too soon, and that, and not the difficulty in the coupling, was the proximate cause of the injury. The evidence fails to disclose any ground of action in respect of the coupling being defective. It does not show a want of reasonable care in supplying suitable apparatus in this respect. *Camp Point Manufacturing Company* v. *Ballou, supra.*

The verdict clearly is not sustained by the evidence, and the court below erred in not granting a new trial.

The following instruction, too, asked by the defendant, and refused by the court, we think, under the testimony, should have been given:

" If the jury believe, from the evidence, that at the time the plaintiff uncoupled the cars, there was a combination car on which there was a railing, and a flat car which did not have any railing, and that the plaintiff in uncoupling the cars should have remained on the combination car, and run it out on the switch, and that if he had done so he would not have been injured, but instead of remaining on the combination car remained on the flat car, and was thrown off the same and injured, then the jury must find for the defendant, as he was injured through his own carelessness and negligence."

The judgment is reversed, and the cause remanded.

*Judgment reversed.*