[No. 5179.]
[No. 2783 C. A.]

GIBBONS v. THE JOSEPH GIBBONS CONSOLIDATED MINING AND MILLING COMPANY ET AL.

1. **Chattel Mortgages—Bills of Sale—Evidence.**

   In an action to have a bill of sale declared a mortgage, evidence of offers to purchase the property made by third parties at a price nearly double the consideration set forth in the bill of sale, is admissible for the consideration of the court in ascertaining the true purport of the transaction.—P. 102.

2. **Practice in Civil Actions—Complaint—Chattel Mortgages—Bills of Sale—Fraud—Extrinsic Evidence.**

   Extrinsic evidence is admissible to show that a bill of sale was intended as a mortgage, although the complaint contains no allegation of fraud in the making of the bill of sale.—P. 104.

3. **Practice in Civil Actions—Chattel Mortgages—Bills of Sale—Parol Evidence to Contradict Recitals.**

   In an action to have a bill of sale of shares of stock declared a mortgage, parol evidence is admissible to deny recitals in such instrument that the plaintiff was afraid that a sale of the stock, pursuant to authority given by a previous assignment by him, would not produce enough to pay the debt, and that

he feared a deficiency judgment, for such recital is but a declaration of a fact that constitutes no essential term or condition of the transaction, and, at most, was a circumstance which, if true, might be shown in explanation of his action, and as evidencing the intent with which he made the bill of sale; and parol evidence is also admissible to deny the receipt of a cash consideration recited in such instrument.—P. 107.

4.  **Practice in Civil Actions—Chattel Mortgages—Bills of Sale— Evidence—Recitals in Instrument—Not Conclusive.**

In an action to have a bill of sale declared a mortgage, a recital therein that it is made in consideration of the surrender and cancellation of a note made by the person executing the bill of sale, is not conclusive that such instrument was not intended as a mortgage, for although the surrender and cancelling of the note is a circumstance favoring the theory of the sale, it is only a circumstance to be considered in connection with all other facts and circumstances in determining the intent and purpose of the transaction between the parties.—P. 108.

*Appeal from the District Court of Arapahoe County.*
*Hon. P. L. Palmer, Judge.*

Action by Joseph Gibbons against The Joseph Gibbons Consolidated Mining and Milling Company, Augustus B. Sullivan, John F. O'Connor, and The Howardsville Concentrating and Sampling Company. From a judgment in favor of defendants, plaintiff appeals.        *Reversed and remanded.*

Mr. T. J. O'DONNELL (Mr. J. W. GRAHAM, Jr., and Mr. STERLING B. TONEY, of counsel), for appellant.

Mr. WM. T. ROGERS and Mr. JOHN F. MAIL, for appellees O'Connor and Sullivan.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The complaint in this case is very voluminous, and sets out in detail many matters and transactions that have very little bearing, if any, upon the prin-

cipal question presented for consideration upon this review. The facts pertinent to the inquiry here are, in substance, as follows:

The appellant, plaintiff below, and appellees O'Connor and Sullivan, defendants below, were stockholders in The Joseph Gibbons Consolidated Mining and Milling Company, which company, at the times hereinafter mentioned, was working certain mining property in San Juan county under a bond and lease. On the 5th day of July, A. D. 1899, it became necessary to raise money to pay certain indebtedness incurred and payments due on the bond. The appellant's proportion of this sum was $3,556.27, which appellee O'Connor advanced to the company for the appellant upon the terms and conditions expressed in the following note, which was executed by Gibbons:

"$3556.27.          Denver, Colo., July 5th, 1899.

"On or before Nov. 1st, 1899, after date I promise to pay John F. O'Connor or order, thirty-five hundred fifty-six and 27-100 dollars, at Sullivan & May's office, for value received, with interest at the rate of eight per cent. per annum from date until paid, having deposited as collateral security for the payment hereof certificates Nos. 11, 12, 13, 14, 15, 16 and 29 of The Joseph Gibbons Consolidated Mining & Milling Company, aggregating 3333 shares of the capital stock of said company, which are hereto attached, which I hereby give the said John F. O'Connor authority to sell, on the maturity of this note, or at any time thereafter at public sale, advertising the same, and giving ten days' notice of said sale, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all the interest due thereon, and also to the payment of all expenses attending

the sale of said collateral security, and accounting to him for the surplus, if any, and in case the proceeds of the sale of the said certificate of stock shall not cover the principal, interest and expenses, I promise to pay the deficiency forthwith after such sale, with interest at eight per cent. per annum until paid.

(Signed)  "JOSEPH GIBBONS."

The certificates mentioned were assigned and delivered to O'Connor as collateral security. This note being unpaid at maturity, a sale of the stock was advertised to take place on the 14th day of November, 1899, at 10 o'clock in the forenoon. On the 13th day of November, 1899, the following bill of sale was prepared, and on the morning of the 14th, before the hour named for the sale, was executed by Gibbons and his wife:

"WHEREAS, Joseph Gibbons, with his certain collateral note dated July 5th, A. D. 1899, for thirty-five hundred and fifty-six 27-100 dollars ($3556 27-100) hypothecated the following certificates numbered 11, 12, 13, 14, 15, 16 and 29 aggregating three thousand three hundred thirty-three (3333) shares of stock in The Joseph Gibbons Consolidated Mining and Milling Company, which said note became due and payable November 1st, A. D. 1899, and the same was advertised for sale in The Denver Republican, said sale to take place at the hour of 10 o'clock a. m. November 14, 1899, and

"WHEREAS, said note provides, among other things, that in case the sale of said stock should not bring sufficient price to pay the face of said note with interest and expenses, and

"WHEREAS, the said Joseph Gibbons is afraid said stock would not sell for sufficient price to pay said note with interest and expenses and there would

still remain due and unpaid a balance by said Gibbons to the holder of said note, John F. O'Connor,

"Now, THEREFORE, in consideration of the premises and of the sum of five dollars in hand paid us, the receipt whereof is hereby acknowledged, and the further consideration of the surrender and cancellation of the said note of said Joseph Gibbons for thirty-five hundred and fifty-six  and 27-100 dollars ($3556 27-100), we and each of us do hereby sell, assign, transfer and set over unto the said John F. O'Connor all of our right, title, interest, claim and demand in and to said certificates of stock.

"IN WITNESS WHEREOF, we and each of us have hereunto set our hands and seals this 13th day of November, A. D. 1899.

"Witness—C. P. Burns, A. B. Sullivan.

(Signed)     JOSEPH GIBBONS.    (Seal)

(Signed)     ELIZABETH M. GIBBONS." (Seal)

This instrument was acknowledged by Gibbons and his wife before George W. Clise, a notary public, on the 14th day of November, A. D. 1899.

The main object of this action is to have this bill of sale declared a mortgage, and the appellee O'Connor adjudged to hold the stock as mortgagee or pledgee, and to obtain a decree allowing the appellant to redeem the same.    The complaint, *inter alia,* alleges:

"That on the day named for the sale, before the hour thereof, plaintiff met O'Connor and told him that he was willing to pay any money he owed, as soon as he could raise the same, but that he did not wish to lose the stock or have it sold, nor to incur any more expenses in connection therewith. That O'Connor stated he was willing that plaintiff should pay the indebtedness and proposed that plaintiff execute a bill of sale to him, O'Connor, and that plaintiff

might have such time as he needed to pay the indebtedness, and agreed that if such indebtedness were paid, to return and reassign the stock to plaintiff. That plaintiff, relying upon these statements, executed to O'Connor a bill of sale for the stock mentioned."

Upon the trial Gibbons testified that previous to signing the bill of sale he had the following conversation with O'Connor:

"The day the sale was to take place I went to see Mr. O'Connor, and I asked him if he was going to count me out of these shares. He said he would give me plenty of time to redeem them, and he said 'Now, Joe, I don't want to take any advantage of your stock; I have all the interest I want in the property; you can have them when you pay the money I have advanced on these stocks.' Then I made a bill of sale; Sullivan drew out a bill of sale there and I signed it to Mr. O'Connor, conditioned that he would turn that interest back when I paid him the money advanced on it. Doctor Burns was present at the time. He asked his cousin, Sullivan, if he had five dollars in change in silver, and Sullivan said 'Yes'; so he tendered me the five dollars in change. I told him that was no sale of the property at all; that was my interest, and I would pay the money advanced on it."

He further offered to testify that the stock was of much greater value than the amount of his note, and that he was offered by C. W. Dennison $5,000 for it on the 13th of November, and also offered to prove this fact by C. W. Dennison; also that J. O. A. Carper was authorized by certain parties to attend the sale and bid as high as $6,000, if necessary, for the stock, and that he communicated this to Mr. O'Connor before signing the bill of sale. This testimony was excluded, and he was not permitted to

contradict the recital in the bill of sale to the effect that he was afraid the stock would not sell for sufficient to pay the note with interest and expenses, and that he never made any such statement to O'Connor or his representative; and also the testimony of Mr. Burns to the effect that at the time of the execution of the bill of sale O'Connor offered Gibbons $5.00 as a cash consideration, which Gibbons refused to take, saying that it was not an absolute sale. The bill of exceptions contained the following in reference to the foregoing and other testimony of the same character:

"And the court thereupon excluded all such testimony, for the reason that, in the absence of any allegation or proof of fraud, duress or undue influence in said transaction, it does not lie in the mouth of plaintiff to impeach his own writing."

1. It is too well settled to admit of controversy, that oral testimony is admissible to show that a deed absolute on its face was intended to have the force and effect of a mortgage. Counsel for appellees do not question this doctrine, but they contend that the testimony that Dennison had offered Gibbons $5,000 and had sent Carper to bid $6,000 for the stock at the sale, was properly excluded, because it did not, in any way, tend to show the market value of the stock; and that the testimony of Gibbons and Burns was not admissible because, in the absence of any allegation of fraud in the making of the bill of sale, Gibbons, who signed it and offered it in evidence, could not be heard to dispute its recitals.

While it may be that the offer of Dennison, and the fact that Carper was willing to bid $6,000 for the stock, was not strictly evidence of the market value of the stock, it nevertheless was evidence of its real value and of the fact that Gibbons could have realized that amount for it, and it became a very im-

portant circumstance for the consideration of the court in ascertaining the true purport of the transaction and in determining whether the transfer of the stock for about one-half of that amount was an absolute sale, or intended to operate only as a mortgage, and was clearly admissible upon the issue herein litigated.

In *Cornell v. Hall*, 22 Mich. 377, 383, Graves, Justice, speaking of an assignment absolute on its face, said:

"Since, therefore, the intention of the parties is the vital question, it is essential to attend to their situation, the price fixed in connection with the value of the property, the conduct of the parties before and after, and all the surrounding facts so far as they are adapted to develop and explain the nature and object of the arrangement."

In *Wilson v. Patrick*, 34 Ia. 362, 370, it is said:

"The rule is recognized by the authorities, quite uniformly, that, when the question is to be determined whether a sale and conveyance be absolute, or only intended as security, the fact that the consideration is grossly inadequate is a strong circumstance, though not conclusive, in support of the claim that the deed was intended to operate as a mortgage."

*Russell v. Southard*, 12 Howard 139, was a suit to redeem a mortgage. Mr. Justice Curtis, who delivered the opinion of the court, used this language:

"It is insisted, on behalf of the defendants, that this question is to be determined by inspection of the written papers alone, oral evidence not being admissible to contradict, vary or add to their contents. But we have no doubt extraneous evidence is admissible to inform the court of every material fact known to the parties when the deed and memorandum were executed. This is clear, both upon principle and authority. To insist on what was really a

mortgage, as a sale, is, in equity, a fraud, which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be.    *    *    *

"The deed and memorandum certainly import a sale; the question is, if their form and terms were not adopted to veil a transaction differing in reality from the appearance it assumed.

"In examining this question, it is of great importance to inquire whether the consideration was adequate to induce a sale. When no fraud is practiced, and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and, therefore, in the cases on this subject, great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold."—*Conway v. Alexander,* 7 Cranch 241; *Morris v. Nixon,* 1 How. 126; *Vernon v. Bethell,* 2 Eden. 110; *Oldham v. Halley,* 2 J. J. Marsh. 114; *Edrington v. Harper,* 3 J. J. Marsh. 354.

This evidence was pertinent and proper to the inquiry before the court, and it was error to exclude it.

2. The further objection that extrinsic evidence was incompetent because the complaint contained no allegation of fraud in the making of the bill of sale, is without merit. As was said by Field, Justice, in *Pierce v. Robinson,* 13 Cal. 116, 127, in speaking of the jurisdiction of courts of equity in cases of fraud, accident and mistake:

"And the doctrine is both novel and startling which restricts, in matters of fraud, its jurisdiction over the operation of written instruments to those cases where the fraud has been committed in their creation. If maintained, it will sweep away its heretofore admitted jurisdiction in an infinite variety of

cases of almost daily occurrence, where the fraud alleged consists in the use of instruments entered into upon mutual confidence between the parties. Fraud in their use is as much a ground for the interposition of equity as fraud in their creation."

Pomeroy, in his Equity Jurisprudence, page 175, volume 4, note 2, uses this language:

"There are some decisions which limit the operation of this doctrine, even in equity, to cases where the absolute form of the conveyance is the result of fraud, mistake or accident. This narrow view seems to have resulted from an erroneous conception of the principle upon which the doctrine rests; the equitable notion of fraud in the grantee's insisting upon the conveyance as absolute, when it was given and accepted only as a security, is carried back to the inception of the instrument, and is properly made to involve the existence of fraud in the very execution of the deed. The doctrine, as stated in the text, is followed by nearly, if not quite, all the recent decisions."

Jones, in his work on Evidence, volume 2, section 451, states the rule on this subject, as announced in the modern decisions, as follows:

"Although in some of the earlier cases this evidence was received only on the grounds of fraud or mistake, yet in later cases it was deemed sufficient evidence of fraud for the grantee to treat the conveyance as absolute, when, in fact, it was not. But the tendency of the modern decisions is, that such evidence may be received to show the real nature and object of the transaction, although no fraud or mistake of any kind is alleged or proved," citing to this effect a large number of cases.

3. In support of the action of the court in not allowing Gibbons to contradict the recital in the bill of sale to the effect that he was afraid that the stock

would not sell for enough to pay the debt, and that he feared a deficiency judgment against him, and the testimony of Burns contradicting the recital of the receipt of the alleged cash consideration, counsel state the rule to be "that, while Gibbons could be permitted to prove a defeasance clause into the bill of sale, that, under no authority, can he dispute its recitals." We think this is stating the rule on this subject too broadly. So far as the bill of sale partakes of the nature of a receipt or is simply declaratory of a fact, it may be explained or contradicted; but, to the extent that it expresses the contract between the parties and defines their rights and liabilities, it is subject to the same rule as other contracts. —17 Enc. Law & Pro., page 593; *Medical College v. University,* 178 N. Y. 153; *Ins. Asso. v. Wickham,* 141 U. S. 564; *Soule v. Soule,* 157 Mass. 451; *Bourne v. Bourne,* 92 Ky. 211, 214; *Fowlkes v. Lea,* 36 So. Rep. 1036; *Gully v. Grubbs,* 1 J. J. Marsh. 387.

In *Insurance Company v. Wickham, supra,* it is said:

"We have no disposition to overrule or qualify in any way the general and familiar doctrine enforced by this court in repeated decisions  *  .  *  * that parol testimony is not admissible to vary, contradict, add to or qualify the terms of a written instrument. The rule, however, is subject to numerous qualifications, as well established as the general principle itself, among which are, that such testimony is admissible to show the circumstances under which the instrument was executed, or that it was, in fact, without consideration."

In *Gully v. Grubbs, supra,* in discussing the extent of the rule making parol evidence inadmissible to contradict or vary the terms of a written instrument, it was said:

"A deed is not conclusive evidence of everything which it may contain. It is not the only evidence of the date of its execution; nor is its omission of a consideration conclusive evidence that none passed; nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent consideration. And, by analogy, the acknowledgment in a deed that the consideration had been received is not conclusive of the fact. *This is but a fact,* which may be explained or contradicted."

The recital that Gibbons was afraid that the stock would not bring sufficient, if sold, to pay the note, interest and expenses, is but a declaration of a fact that constitutes no essential term or condition of the transaction, and, at most, was a circumstance which, if true, might be shown in explanation of his action, and as evidencing the intent with which he made the bill of sale. Oral evidence was, therefore, admissible to show that he, Gibbons, was not under any such apprehension, notwithstanding the recital to the contrary, and the court erred in excluding his testimony in that respect, and the testimony of Burns that, as a matter of fact, no cash consideration was received by Gibbons, notwithstanding the acknowledgment of such receipt in the bill of sale.

We are not called upon, nor is it within our province, to determine whether the evidence offered and excluded was sufficient to support the appellant's contention as against the testimony of the appellees, and we find in the record no support for counsel's statement that "there is a mass of testimony from Gibbons and his witnesses that this was a pledge; O'Connor and his witnesses testified to the contrary. The court who heard the testimony seems to have attached the greater weight to the testimony of O'Connor, and held it to be not a pledge, but an absolute sale." It appears that the testimony above

referred to was admitted over the objection of the defendants, the court reserving the right to pass upon its admissibility upon final argument. Upon final argument, the court sustained the objection, and excluded this testimony, as appears from the portion of the bill of exceptions above quoted.

The statement of the court, when the cause came on for argument, that "The only point upon which he cared to hear argument was the admissibility of the evidence attacking the bill of sale, and whether plaintiff could be allowed to show that the absolute transfer of the shares was not intended to be a sale but a mortgage," would indicate that he regarded such testimony, if admissible, of sufficient force to support plaintiff's contention. But, however this may be, it cannot be determined what conclusion he would have reached had this testimony been admitted and considered.

The bill of sale recites that it is made in consideration of the surrender and cancellation of Gibbon's note, and counsel for appellees insist that, under the well-settled rule that "there can be no pledge where there is no debt," this recital is conclusive of the nature of the instrument under consideration. It does not necessarily follow that, by the surrender and cancellation of the note, the debt was extinguished.—*Marshall v. Thompson*, 39 Minn. 137; *Ferris v. Wilcox*, 51 Mich. 105; *Holmes v. Grant*, 8 Paige's Ch. 243, 251.

As was said in *Marshall v. Thompson, supra:*

"The rule is inflexible, 'Once a mortgage, always a mortgage.' Nor is it material that the note or personal obligation evidencing the debt is surrendered or cancelled, the debt remaining in fact unpaid."

In *Ferris v. Wilcox, supra,* the land in question was incumbered by two mortgages, overdue, and

owned by the plaintiffs, amounting to $718.76. The defendant executed to the plaintiffs a warranty deed of the land, and it appears to be assumed in the case, though not directly proved, that the notes which the mortgages secured were given up and canceled. On receipt of the deed, plaintiffs executed and delivered to defendant a contract. Mr. Justice Cooley, after stating the facts and the claims of the respective parties, says:

"The controversy thus stated is not one which necessarily must be determined upon the face of the papers. If it was, the plaintiffs would unquestionably be entitled to retain their judgment. By the contract, the defendant appears to be purchaser, not mortgagor; and the surrender or cancelment of the notes would indicate payment and the determination of the relation of debtor and creditor. But these facts are not conclusive. All contracts are to be read in the light of the surrounding circumstances, which are sometimes quite as significant as the words themselves, and we interpret the words by placing ourselves as nearly as possible in the position occupied by the parties when they made use of them to evidence their intent."

In *Holmes v. Grant, supra,* Denio, Vice Chancellor, who delivered the opinion of the court, says:

"No principle rests upon better authority in this court than that the giving of the absolute deed on account of a present loan or a precedent debt, with a concurrent agreement in writing, or by parol, for a redemption at any future time upon payment of the debt, is a mortgage. * * * I do not appreciate the force of the argument that, because the notes were given up, the debt was extinguished. * * * It is not essential that the personal remedy against the mortgagor should be preserved. There is a debt

*quoad* the redemption, but not in respect to the personal remedy.''

The surrender and canceling of the note is a circumstance favoring the theory of sale, but it is only a circumstance to be considered in connection with all other facts and circumstances in determining the intent and purpose of the transaction between the parties.

For the foregoing reasons, the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.