ROSANNA S. LUCAS, APPELLANT, VS. LEONIDAS E. WADE IN HIS OWN RIGHT AND AS TRUSTEE FOR MARY I. WADE, LEONIDAS E. WADE JR., AND F. TULY WADE, MARY WADE AND LEONIDAS E. WADE JR., APPELLEES.

| 43 | 419 |
| 48 | 295 |
| 43 | 419 |
| f52 | 553 |
| 43 | 419 |
| f58 | 479 |
| 58 | 521 |

1.  Where a husband is the real purchaser of land, the title to which at his instance is conveyed to his wife for his benefit, the vendor will have a lien on the land for unpaid pur-

chase money evidenced by notes signed by husband and wife.

2.   The waiver of the lien which arises in equity in favor of a vendor of real estate for unpaid purchase money is defensive matter, and it devolves upon a defendant insisting on such defence to allege and prove it. Where, however, minors are interested defendants the court will, in obedience to the rule entitling them to special protection in a court of equity, entertain such a defence in their behalf without its being specially pleaded.

3.   The conclusion of a chancellor on testimony taken without an opportunity on his part to see and hear the witnesses, while entitled to due weight, is not so conclusive as the verdict of a jury, or where he has an opportunity to hear the witnesses.

4.   The testimony examined in this case and held not to be sufficient to authorize the conclusion that there was a waiver of a vendor's lien shown to exist.

5.   A set-off must be pleaded and exist in favor of defendant in the same right in which he is sued.

Appeal from the Circuit Court for Duval County.

*Statement.*

The bill of complaint of Rosanna S. Lucas, filed in the Circuit Court for Duval county against Leonidas E. Wade, F. Tuly Wade, his wife, Leonidas E. Wade, Jr., Mary I. Wade, the last two being infants, and Leonidas E. Wade, trustee for said infants, alleged that on the seventh day of August, 1890, the defendant L. E. Wade agreed to purchase from her, at the price of two thousand dollars, the north half of lot three (3) in block one hundred and one ('101) in the city of Jacksonville, Duval county, Florida, as designated upon the I. D. Hart map of said city, which she then owned, and that in pursuance of said agreement, and at the request and instruction of L. E. Wade, said complainant on said date conveyed by deed said premises to defendant, F. Tuly Wade; that shortly thereafter L. E. Wade paid all of said purchase

price except eight hundred and ninety and 75-100 dollars which was evidenced by two promissory notes bearing date of September 1st, 1890, one for $250 and the other for $640.75 payable one day after date and executed by defendant Leonidas E. Wade and apparently by his wife F. Tuly Wade; that to induce complainant to retain said notes defendants L. E. Wade and F. Tuly Wade agreed with her that the payment of said notes should be secured by a vendor's lien on said premises and she retained the same under such agreement and understanding; that said Leonidas E. Wade and wife in July 1894, conveyed said property, together with all other property he owned, to W. P. Ward who, with his wife, conveyed the same to Leonidas E. Wade, trustee for his minor children Leonidas E. and Mary I., said deeds being of record in Duval county, and the one from Ward to Wade, trustee, contains the stipulation that the property was conveyed in trust for said children "with full power to sell, grant, bargain, transfer and convey, to mortgage, redeem and remortgage as often as he may see fit, and to lease and release." It is alleged that no consideraton was given for the two deeds, and the transaction was a device of L. E. Wade to hinder and prevent complainant from enforcing payment of her said purchase money notes, payment of which had many times been requested of defendants but they had failed and refused to pay any part of same. The special prayer is that complainant be decreed to have a lien upon said property for what may be found to be due her on said notes, together with costs of suit, and that Leonidas E. Wade and F. Tuly Wade be decreed to pay the same within a time to be fixed by the court, and in default thereof that said land be sold and the proceeds applied to such payment.

A decree *pro confesso* was entered against F. Tuly
Wade, and L. E. Wade individually and as trustee for
the minor children filed a demurrer which was overruled.
He then individually and as trustee answered, and therein
stated that it was not true, as alleged, that on the seventh
of August, 1890, complainant owned the north half
of the lot described in her bill; that it was not true, as
alleged, that on the seventh day of August, 1890, defend-
ant Leonidas E. Wade agreed to purchase said property
from complainant, or that he agreed to pay her for said.
property the sum of two thousand dollars, or any other
sum of money; that it was not true, as alleged, that in
pursuance of an agreement with defendant Leonidas E.
Wade and at his request and instruction complainant con-
veyed said premises to his wife, F. Tuly Wade, on Aug-
ust 7th, 1890. It is admitted that complainant executed
two deeds to F. Tuly Wade, wife of L. E. Wade, on Aug-
ust 7th, 1890, but it is denied that either was executed
in pursuance of the agreement set forth in complainant's
bill. · It is admitted that on the first of September, 1890,
defendant L. E. Wade executed and delivered to com-
plainant two promissory notes for two hundred and fifty
and six hundred and forty and 75-100 dollars respect-
ively, due one day after date and apparently executed by
F. Tuly Wade, but it is alleged not to be true that the
sum of money evidenced by said notes, or any part there-
of, was for purchase money of said property, or that
defendants, Leonidas E. Wade and F. Tuly Wade, or
either of them agreed with complainant in order to
induce her to retain said notes that their payment should
be secured by a vendor's lien on said premises, and it is
denied that they were retained by complainant with such
understanding and agreement. It is denied that said

notes or either of them were for purchase money; or complainant had or has any lien on said premises for purchase money. The deeds from Leonidas E. Wade and wife, F. Tuly Wade, to W. P. Ward, and from the latter to Leonidas E. Wade, trustee, with the alleged stipulations therein are admitted, but it is denied that either of said deeds was without consideration, or that they were a device of defendant L. E. Wade to hinder and prevent complainant from enforcing payment due her upon said notes. There was also the general traverse in the answer.

An answer of the minors, by a guardian *ad litem,* claimed protection for them on account of their age and submitted their rights to the consideration of the court with prayer for strict proof of the matters alleged in the bill.

Replications were filed, evidence taken for both parties, and upon final hearing the court dismissed the bill, from which decree complainant has appealed.

A sufficient statement of the facts will appear in the opinion.

*J. M. Barrs* and *H. B. Philips,* for Appellant.

*A. W. Cockrell & Son,* for Appellees.

MABRY, J., (*After stating the facts.*)

The main contention in support of the decree, and the one evidently upon which it was based in the lower court, is that the complainant Rosanna S. Lucas, under the ruling in McKeown v. Collins, 38 Fla. 276, 21 South. Rep. 103, lost or waived her vendor's lien on the land

which she seeks by her bill to charge with purchase
money. Testimony was introduced before the master on
the part of defendants tending to establish an offset in
favor of Leonidas E. Wade for board of complainant to
an amount equal to her alleged purchase money demand,
if not larger, but the court excluded this evidence in
reaching a final decision. The answers do not set up
as a defence that complainant waived her vendor's lien on
the land, nor do they make any allusion to the offset for
board or any other such demand. The answer of Leon-
idas E. Wade consists of bare denial of the literal allega-
tions of the bill, with an admission of a few facts therein
stated, and, though not excepted to, is not, in the light of
the facts disclosed, entitled to much consideration on the
essential points upon which the case must be determined,
Were it not for the fact that Leonidas E. Wade appears
to be now acting for his minor children, and their guar-
dian *ad litem* has by answer asked the care and protection
of the court in their behalf, we would hold that neither
the defence of a waiver of the vendor's lien, nor that of
an offset for board, was open for consideration under
the pleadings in the case. But infants are entitled to
special protection in a court of chancery, and we there-
fore examine the grounds upon which the decree can rest
without reference to the question of pleading. We must
proceed, however, upon the theory that the waiver of the
lien which arises in equity in favor of a vendor of real
estate for unpaid purchase money is defensive matter,
and the burden of proving it rests upon the defendant,
unless it otherwise appears (Seymour v. McKinstry,
106 N. Y. 230, 12 N. E. Rep. 348; 14 N. E. Rep. 94; 2
Warvelle on Vendors, p. 712 sec. 20,) and especially
should this be the rule under the state of pleadings in

this case. Some facts in the case are not disputed. They
are that complainant sold to defendant, Leonidas E.
Wade, the half lot of land described in the bill for $2,000,
and that after he discharged a mortgage encumbrance,
certain other charges and made a cash payment of $50,
there remained about the sum of $890, and that this sum
represented the consideration of two notes, one for $250
and the other for $640.75, which is sought to be charged
on the land as unpaid purchase money. The notes are
dated September first, 1890, and are signed by F. Tuly
Wade and Leonidas E. Wade. It also appears that com-
plainant, Rosanna S. Lucas, conveyed the half lot of land
in question, on the seventh day of August, 1890, to F.
Tuly Wade, and that she and her husband, Leonidas E.
Wade, conveyed in July, 1894, said lot and all other real
estate he owned to a third party to be reconveyed by him
to Leonidas E. Wade as trustee for his minor children,
Leonidas E. and Mary I., and that said third party did
so convey the property, all of which deeds have been
recorded upon the public records of Duval county. The
two last mentioned deeds recite a consideration of ten
dollars, but the proof clearly shows, we think, that they
were voluntary, without valuable consideration, and
intended simply to place the title in Leonidas E. Wade as
trustee for the minor children. They can not, therefore,
be regarded under said conveyance as *bona fide* purchas-
ers for value, and there is no obstacle in the way of
enforcing complainant's demand for the purchase money
against the lot in the hands of their trustee provided
she has not otherwise lost her lien.

Leonidas E. Wade testified that he bought the north
half of lot 3, block 101, about the 20th or 21st of May,
1890, at which time complainant executed to him a deed

for the lot, and that he and his wife then executed to complainant a mortgage to secure the balance of the money of $890.75, to be paid for the benefit of her niece and nephew, and that the mortgage remained in complainant's possession until the first day of September, 1890. He says that on the seventh day of August, 1890, he got complainant to execute a deed for the property to his wife, and he then destroyed the deed to himself. This deed and the mortgage referred to never appeared of record. Complainant denies that any deed was ever executed prior to August 7th, 1890, but she admits that a mortgage was drawn up prior to August 7th, 1890. As to the execution of both the deed and mortgage, Wade is corroborated by other witnesses, and we must conclude under the decree rendered that such instruments were executed. Whether or not they were accepted, must depend upon the testimony. Ellis v. Clark, 39 Fla. 714, 23 South. Rep. 410. Complainant testifies that she was not satisfied with the mortgage, urging as an objection that Mrs. Wade had not signed it, and asked that another be executed, and that Wade finally drew up the notes and tendered them to her as purchase money notes; saying that she was the vendor and had a lien on the land to secure them. She says that Mr. Wade got a book and read out of it to show her that she had a vendor's lien on the land for the notes, and in this statement she is corroborated by J. W. Lucas. She states that when the notes were accepted Wade destroyed the mortgage. Mr. Wade says that complainant seemed to become dissatisfied with the mortgage, saying that Mrs. Wade's name should have appeared first therein, and that the mortgage was not proper on account of his name appearing first, and that he should give her promissory notes and take

up the mortgage, which he did. That the mortgage then remained in his possession until April, 1892, when it was taken from his possession, together with other papers relative to another matter. He further states that he informed complainant that by taking the mortgage, and then in lieu thereof the notes, she would not acquire or have a vendor's lien on the land. Still she accepted the notes. While the testimony as to the execution of both the deed and mortgage is sufficient to sustain a finding that they did exist, yet on the question as to non-acceptance of the mortgage, complainant is corroborated by J. W. Lucas, and Mr. Wade is alone, with a strong circumstance against the accuracy of his testimony on a material point. On the seventh day of August, 1890, Wade and wife, with complainant uniting, executed a mortgage to Geo. P. Canova to secure a loan of money procured through W. P. Ward. Complainant testified that when the notes were given to her, L. E. Wade delivered to her a statement showing what he had paid out as a charge on the lot and the balance due her for purchase money. This statement was put in evidence and admitted by Wade to be in his handwriting and to have been delivered to complainant, but he says it was delivered shortly after the mortgage was executed to complainant, and previous to the making of the notes, which was on the first of September, 1890. The statement contains an item of $40 for taxes, $50 for Walter, $25 for Ward, $24 for abstract, $1.25 for satisfaction and $970 Reed mortgage. The testimony shows that Ward was to be paid in connection with the loan to Canova, and that the abstract of title was also to be paid out of the purchase money of the lot. Mr. Wade says this statement was made and delivered shortly after May 20th or 21st, 1890, and be-

fore the notes were executed. In this we think he is mistaken. How could Mr. Wade well anticipate on or about the 20th or 21st of May, 1890, what would be the cost of an abstract and Ward's charges connected with the loan to Canova on the following seventh day of August? Furthermore, it appears from the testimony of Ward that the Reed mortgage was in existence when the Canova loan was being arranged. This statement tends strongly to corroborate complainant in her testimony that it was given her about the time the notes were executed. If complainant did not in fact accept the mortgage as a completed transaction, but objected to it, and it was finally arranged between the parties that notes should be given to represent the purchase money, then she should have a lien on the land to secure them. This would result though it be held that the title passed to Leonidas E. Wade by the first deed made to him as he states in his testimony. It fully appears throughout the entire case that he was the purchaser of the land and complainant would have a lien for unpaid purchase money, whether the deed was made to him, or at his instance to a third person for him. 2 Warvelle on Vendors p. 704 § 11. That there was objection to the mortgage on the part of complainant is clearly shown, and it is quite singular that she should have been willing to voluntarily surrender a mortgage on the lot and accept unsecured notes with full information that she thereby lost all security for the balance of what was admittedly due. Complainant further states that she trusted Mr. Wade to fix up the matter for her, which he agreed to do, and he does not deny this. She was a grand-aunt of Mrs. Wade, of some sixty years of age, and lived in their family. We do not overlook the fact that it appears from

the testimony that a very bitter feeling existed on the part of complainant toward Mr. Wade, and that she used very extreme language in reference to him, but this state of feeling is not shown to have existed until after she had deeded the property and obtained the notes. There are other circumstances in the case that have influenced us, and, considering that the burden was upon respondent to show a waiver of the vendor's lien, we are convinced that the just and proper conclusion to reach is that complainant had not accepted the mortgage as security for her unpaid purchase money when the notes were given to her, and that she would have a vendor's lien on the lot for their security. This result accomplishes substantial justice, and we are fully convinced from a careful reading of all the testimony that such decision should have been rendered in the case. Where the finding of the chancellor is based upon testimony taken without an opportunity to see and hear the witnesses his conclusion, while entitled to due weight, is not so conclusive as the verdict of a jury, or where he has an opportunity to hear the witnesses. The rule in such cases is that the conclusion of the chancellor will not be disturbed unless it clearly appears to be erroneous. Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97.

The court excluded the evidence in reference to the set-off for board submitted by respondents, and in this result we concur. This testimony did not show payment on the notes. Mr. Wade says: "I notified Miss Lucas she must leave my house, and if she attempted and did remain I would charge her $20 a month board, and would hold the same against the notes she held against myself." He does not say that she ever agreed to this, and there is no testimony showing that she did. Whatever claim

Leonidas E. Wade may have against complainant for board, it is in his own right, and not as trustee for the minor children.   He is sued in his own right, but the principal object of the bill is to subject the lot of land held by him as trustee to the payment of the notes, and an offset in his individual favor would be one in a different right so far as the minors are concerned.   As to himself, he has not set up such a defence in his answer, and can not rely upon it.

The decree is reversed with directions to the chancellor to enter a decree in favor of complainant for the amount that may be found due on the notes for purchase money, and that in default of payment the north half of lot 3, block 101, according to the map of I. D. Hart of the city of Jacksonville, be sold to pay the same.