PORTLAND CHEMICAL & PHOSPHATE CO. et al. v. BLODGETT.

(Circuit Court of Appeals, Fifth Circuit. April 9, 1907.)

No. 1,640.

VENDOR AND PURCHASER—VENDOR'S LIEN—CONSTRUCTION OF CONTRACT.

By one of three separate instruments, executed on the same day, complainant conveyed certain real estate to an individual; the latter, by the second, conveyed it to a corporation, while, by the third, which was between complainant and such corporation, said conveyances were recited, and provision was made for deferred payments of the purchase money. Each provided expressly that the grantee should not sell or incumber the property during the ensuing five years, which was the time given by the third for payment of the purchase money in full. The instruments each described the property, and were so executed as to be entitled to record,

and all were recorded in the county where the land was situated. The purchasing corporation, after having made the first of the deferred payments, was adjudicated a bankrupt, and its interest in the property was sold by its trustee subject to all valid existing liens; the purchaser having actual notice of one at least of said instruments. *Held,* that they were to be construed as a single instrument, and gave the complainant a lien upon the property for the unpaid purchase money which was enforceable in equity as against the purchaser.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

Previous to the 1st of July, 1902, negotiations had been carried on between Warren K. Blodgett, who was the president of the Albion Chemical & Export Company, a Maine corporation, with the plaintiff, the Portland Chemical & Phosphate Company, also a Maine corporation. These negotiations ripened into three instruments of writing, each bearing date the 1st of July, 1902, and that day finally agreed upon between the phosphate company, party of the first part, and Warren K. Blodgett, party of the second part, by one of which the phosphate company, party of the first part, "does grant, bargain, sell and con vey unto the said Warren K. Blodgett, the said party of the second part, and his heirs and assigns forever, all those certain lots, tracts and parcels of land," etc., describing the premises here involved, with limitations not here material, and continuing: "It is agreed between the parties hereto that the party of the second part shall not, nor shall his heirs, representatives or assigns, during the five years next ensuing from and after the date of this deed, make any sale, deed, or conveyance of the within granted premises or any part thereof, without in either case the express assent thereto in writing of the said party of the second part being had and obtained."

By another of the three instruments just referred to, Warren K. Blodgett, as party of the first part, conveyed the premises to the Albion Chemical & Export Company, party of the second part, in which this provision occurs: "It is agreed between the parties hereto that the party of the second part shall not, during the five years next ensuing from and after the date of this deed, make any sale, deed or conveyance of the within granted premises, or any part thereof, or make or suffer any incumbrance, mortgage or lien of any nature whatsoever upon the within granted premises, or any part thereof, without in either case the express assent thereto in writing of the said Portland Chemical & Phosphate Company being first had and obtained, in accordance with a provision in the deed of said company to me, of even date herewith, to which reference is hereby made."

The other of the instruments referred to, as far as material, is as follows: "Agreement made this the 1st day of July, A. D. 1902, between the Albion Chemical & Export Company, a corporation organized under the laws of the state of Maine, of the first part, and the Portland Chemical and Phosphate Company, a corporation organized under the laws of the state of Maine, of the second part.

"Whereas, the party of the second part has this day sold to Warren K. Blodgett, of Cambridge, Massachusetts, who has by his deed this day conveyed to the said party of the first part, the following lands lying and being in Levy and Alachua counties, Florida, to wit [here the premises are described], upon the following conditions and terms, to wit, for the sum of one hundred thousand dollars; thirty thousand dollars thereof to be paid in cash, and the sum of seventy thousand dollars, the balance of said purchase money, to be paid as follows: One dollar per ton upon each and every ton of phosphate rock mined upon and sold from said land, either by the said party of the first part or its representatives or successors, said payments to be made annually at the end of each and every year from this date to the party of the second part, or until the said sum of $70,000.00 shall be fully paid, and the mining of said phosphate rock is to begin within five months from this date and at least 14,000 tons of such rock to be mined and sold and the sum of $14,000, paid each and every year until the said sum of $70,000.00 is fully paid, and no conveyance, mortgage, bonds, liens or other incumbrances of any

kind is to be made or placed of or upon said lands so conveyed, either by the said party of the first part or its representatives or successors until the said sum of $70,000.00 is fully paid.

"Now, therefore, this agreement witnesseth that the said party of the first part, in consideration of the premises and of one dollar to it in hand paid by the party of the second part, doth hereby agree, promise and bind itself and its successors, that the stipulations and agreements heretofore in this instrument set out shall be strictly performed and the said sums of money fully paid; and further, that it will at the beginning of each and every year, until the final performance of this agreement, give to the party of the second part the promissory note of the party of the first part properly executed, payable in one year from that date without interest, for the amount of fourteen thousand dollars, provided so much still remains due under the terms of this agreement; and further, in the event of the nonpayment of any one of these said notes at their maturity, or any removal of or attempt to remove from said lands, by the said party of the first part, any property, except the phosphate rock mined by it, before said lands are fully paid for, the said party of the first part, for itself and its successors, hereby expressly consents and agrees to an immediate attachment of all of its property, except said phosphate rock, in the state of Florida, by the said party of the second part, for its failure to comply with this its agreement, and expressly agrees that such attachment shall be valid and binding."

These writings were, each and all of them, duly and in due time recorded in the county of Florida, in which the lands described are situated. Of the $100,000, $30,000 thereof, stipulated to be paid in cash, was so paid at the time the negotiations were consummated, and $14,000, which was to become due at the end of a year from that date, was paid, and a note for the second payment, which became due the 1st of July, 1904, was given according to the terms of the agreement; but, before it matured, or anything was paid on it, the maker, the A. Company, was adjudged a bankrupt, leaving a balance of $46,000 of the purchase money unpaid at the time of the adjudication. The petition in bankruptcy against the A. Company was filed in the proper court March 4, 1904. The proper schedules were filed in that court on the 21st of March, 1904. Schedule A (2), creditors holding securities, was as follows:

| "Ledger fol. | | Value of Securities. | Amount of Debts. |
|---|---|---|---|
| | | $ cts. | $ cts. |
| | ................................... | | |
| | ............................... | | |
| 14 & 16 | Portland Chemical & Phosphate Co., or James Willis Taylor as assignee of this account; Portland, Me., street number unknown. Real estate & plant at Albion, Florida, on which lien is claimed by Portland Chemical & Phosphate Co., under agreement in writing. | | (14,000 note 42,000 due bill not yet payable.) |
| | Boston, Mass., July 1st, 1902 ........ | Unknown | 56,000.00" |

On the 21st of March, 1904, the company was adjudged bankrupt, and such further proceedings were had in the court of bankruptcy that in May, 1904, the trustee in bankruptcy of the estate of the A. Company sold at public sale all his right, title, and interest as such trustee in and to all of the said property, subject to all valid and existing liens and incumbrances, for the sum of $1,050, to Edward E. Blodgett, the defendant, who is a brother of Warren K. Blodgett. The latter part of the year 1905, the plaintiff company filed its bill in the court below against the defendant, the purchaser at the bankrupt sale, setting up substantially all of the above-stated facts, claiming a creditor's lien on the property it had conveyed for the payment of the $56,000 of the purchase money remaining unpaid, for a decree to enforce the lien; and prayed, in the alternative, that in event the court was of opinion that the contract by its own terms created a lien on the property which waived the grantor's lien, then for a decree to enforce that lien by a sale of the property, and from the proceeds

of said sale to pay the balance of the purchase money. There were demurrers to the bill, which were overruled. Defendant answered, and the decree from which this appeal is taken recites: "This cause coming on for hearing upon the bill, answer, replication, and testimony taken and filed by the respective parties herein, and the same having been argued by the counsel and considered by the court, it is now ordered, adjudged, and decreed: (1) That the equities of the case are with the defendant, and that the plaintiff, in and by his said bill and testimony taken in support thereof, has not made out such a case as this court, as a court of equity, can grant any relief therein." To reverse that decree this appeal is prosecuted.

H. Bisbee and George C. Bedell, for appellants.

E. C. Maxwell and Lucius J. Reeves, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, having stated the case as above, delivered the opinion of the court.

There is substantially no dispute as to the facts affecting this controversy. There is no room for the application of the doctrine and learning applied to protect an innocent purchaser against a secret lien. The respondent represents, in reference to the issues here presented, the bankrupt debtor, and does not in any sense occupy the position of a creditor. The papers referred to, and as far as material quoted in the statement of the case we have made, present features which require that they should be treated in their construction as one instrument. They show clearly the property which was the subject of the sale, the parties who were the seller and the buyer, the price that was agreed upon, the amount that was paid at the time of the sale, and the amount that remained unpaid. There is no dispute as to the sum that has been paid since, and as to the amount that still remains unpaid. It is therefore a plain case where the plaintiff has parted with its property to the respondent—for, as we have already said, the respondent represents the original purchaser—which the respondent now holds, and for which he has paid not half of the agreed purchase money. The written instruments which evidence the sale were such as by law are entitled to registration in the county and state where the land is situated. They were all duly authenticated for registration and duly registered in due time. With abundant care they provide that the purchaser shall not, during the five years next ensuing after their date, make any sale, deed, or conveyance of the granted premises, or any part thereof, without, in either case, the express assent thereof in writing of the seller. This provision is contained in full force and the clearest expression in each one of the papers, which we construe as a single writing evidencing the transaction between the seller and the buyer. Their due registration gave constructive notice of their material contents to all parties undertaking to deal for or on the credit of the granted premises. Besides this constructive notice, the respondent had actual knowledge of the existence and terms of at least one of the three writings set out in the statement of the case. It seems to us to be wholly immaterial whether technically a vendor's or grantor's lien sprang out of these transactions, or whether the plaintiff's right took the shape of a contract lien. It is plain that, besides the money paid at the time of the sale and the $14,000 paid, it has re-

ceived nothing in the way of other security to take the place of its natural right to look to the thing sold for the unpaid part of the purchase price. This appears to us to be so clearly shown on the face of the papers themselves as to exclude room for argument and the citation of authority. In support, however, of the seller's right, under such circumstances, to look to the property sold for the complete satisfaction of the agreed price, we content ourselves with citing Lucas v. Wade, 43 Fla. 419, 31 South. 231; Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842, 38 L. Ed. 802.

We are of the opinion that the Circuit Court erred in decreeing that the equities of this case are with the defendant, for which error the decree must be reversed.

It is therefore ordered that the decree appealed from is reversed, and the cause is remanded to the Circuit Court, with directions to pass its decree in favor of the complainant therein for the amount remaining unpaid of the purchase money as shown, and decree that the complainant has a valid and subsisting lien on all of the premises described for the satisfaction of its debt, and providing for a foreclosure thereof in manner and terms agreeab'e to equity.