ORRIS S. FERRIS AND EPHRAIM W. WILCOX v. OLIVER M. WILCOX.

*Contracts—Construction—Change in mortgage security—Deed absolute and defeasance—Right of possession.*

Contracts must be construed in the light of their circumstances and by taking, as nearly as possible, the position occupied by the parties when they used the words, in which the contracts are expressed, to evidence their intent.

The mortgager of land that was worth considerably more than the mortgage debt, deeded it to the mortgagee and took back a contract of sale, which provided that in case of default in payment, the party of the first part should be entitled to immediate possession, and should also have a lien on the crops. *Held*, that the deed and contract together should be construed as a mortgage, amounting, only, to a change in the form of a security for a continuing liability, and that it was unimportant that the conveyance and defeasance were, as indeed, was formerly customary, separate instruments.

A deed absolute given by way of security conveys no right of possession, if the papers show that the relation between the parties thereto is that of mortgager and mortgagee, and that the mortgager is left in possession under an arrangement which amounts to a defeasance of the deed.

A mortgager of land is entitled to possession until foreclosure and does not forfeit this right by failure to make payments as stipulated.

Error to St. Joseph. (Pealer, J.) June 7.—June 20.

EJECTMENT. Defendant brings error. Reversed.

*Corbin & Cobb* for appellant. Where a deed and defeasance are executed together, they are considered one instrument: Powell on Mortgages 67, and have the effect of a mortgage: *Brockway v. Wells* 1 Paige 617; *Montgomery v. Spect* 55 Cal. 352.

*William Sadler* and *John B. Shipman* for appellee.

COOLEY, J. On October 19, 1878, defendant was the owner of a parcel of land containing thirty acres, situate in the county of St. Joseph. The land was encumbered by

two mortgages, then overdue and owned by the plaintiffs,.
amounting to seven hundred and eighteen dollars and seventy-
six cents.   On the day named defendant executed to the
plaintiffs a warranty deed of the land, and it appears to be
assumed in the case, though not directly proved, that the
notes which the mortgages secured were given up and can-
celled.   On receiving the deed plaintiffs executed and de-
livered to defendant a contract, a copy of which is given in
the margin.*   Defendant, after receiving the contract, re-
mained in possession of the land, and made payments on the
contract as follows:   $60, April 1, 1879 ; $65, August 16,.
1879 ; $30, August 23, 1879.   On October 1, 1880, $60 was
due on the contract, and this not being paid, plaintiffs on

---

*This agreement, made this 19th day of October,.1878, between O. S.
Ferris and E. W. Wilcox of the first part, and Oliver M. Wilcox of the·
second part, witnesseth, that said Ferris and Wilcox, in consideration of
the covenants and undertakings on the part of said Oliver M. Wilcox
hereinafter named, has bargained and sold, and by these presents does
bargain and sell, unto said Oliver M. Wilcox, all that certain parcel of
land in the township of Leonidas, county of St. Joseph and State of
Michigan, described as follows :   The west thirty acres of the west half
of the south-east quarter of section number three, in township number
five south, of range number nine west, for the sum of seven hundred and.
eighteen dollars and seventy-six cents, which the said party of the second
part agrees to pay as follows:   One hundred and eighteen dollars and
seventy-six cents, with interest on same at ten per cent., on or before the
first day of April next, and six hundred dollars on October first, 1882,
with interest at ten per cent. per annum, payable on the first day of
October of each and every year; and the party of the second part further
agrees to keep said farm in as good order and as well fenced as it now
is, and that he will pay all taxes and assessments chargeable to or upon
said premises after the delivery to him of the possession thereof, and
that if default be made by the party of the second part thereof, then the·
parties of the first part shall be at liberty to consider this contract as for-
feited,·and annulled, and may re-enter possession of said premises, and
that the crop or crops growing upon said premises at the time of said
default, shall become the property of said party of first part for purpose·
of securing any sum of principal or interest that may be due upon this·
agreement.

   And said parties of the first part on their part agree that on receiving·
the said purchase price, principal and interest at ten per cent., they will,
at the cost of said O. M. Wilcox, execute and deliver to said party of
second part a good and sufficient deed for conveying and affirming to·
him said premises.

   It is mutually agreed that the party of second part shall have posses-
sion of said premises from and after the 19th day of October, 1878, and
that the stipulations herein are to apply to and bind their heirs, execu-
tors and administrators and assigns of the respective parties.

                                      E. W. WILCOX.
                                      O. S. FERRIS.
                                      OLIVER WILCOX.

the nineteenth of the same month served on defendant a notice to quit and surrender possession. This notice being disregarded, the present action was instituted.

In bringing this action the plaintiffs assume that the relation existing between themselves and the defendant is that of vendor and purchaser. Having become the owners of the land by the conveyance of the defendant, they have made with him, as they might have done with any other person, a contract to sell and convey to him the land for a sum named as the purchase price, upon condition that he pay the purchase price at times specified. Meantime, until default, they have allowed him to remain in possession. Default has occurred, and thereby the rights of defendant under the contract have come to an end, and plaintiffs, as owners of the land, have become entitled to possession. This was the view taken of the case by the circuit judge who gave judgment for the plaintiffs.

The defendant contends that this view is altogether erroneous. Having been mortgagor to the plaintiffs at the time the deed was given, he insists that his relation to the land was not changed by the transaction which then took place; that he did not cease to be debtor nor the plaintiffs to be creditors; that he simply changed, at the request of plaintiffs, the form but not the nature, of the security; that the conveyance, though absolute in form, was a conveyance by way of security and therefore necessarily a mortgage; that the contract purporting to be a contract of purchase was merely a defeasance of the contemporaneous deed; and that he, being mortgagor still, as he was before, is entitled to all the rights of a mortgagor, among which is the right to possession of the land until foreclosure. *Baker v. Pierson* 5 Mich. 456; *Caruthers v. Humphrey* 12 Mich. 270. This right can never be forfeited by failure to make payments as stipulated. *Batty v. Snook* 5 Mich. 231.

The controversy thus stated is not one which necessarily must be determined upon the face of the papers; if it was, the plaintiffs would unquestionably be entitled to retain their judgment. By the contract the defendant appears to be

purchaser, not mortgagor; and the surrender or cancelment of the notes would indicate payment and the determination of the relation of debtor and creditor. But these facts are not conclusive. All contracts are to be read in the light of the surrounding circumstances which are sometimes quite as significant as the words themselves, and we interpret the words by placing ourselves as nearly as possible in the position occupied by the parties when they made use of them to evidence their intent.

Looking, then, at the position of the parties when these papers were executed, we find the defendant debtor and mortgagor to the plaintiffs for a certain sum of money. He deeds them the land, and they surrender to him the evidences of his indebtedness. But they immediately give him a writing promising to reconvey to him the same land provided he shall pay to them a sum of money which corresponds exactly to the sum before owing. Meantime, until default in payment, they leave him in possession and enjoyment of the land as before. These are the facts which we are to have in mind when seeking the intent of these papers. But there is a further and very pregnant fact which is shown by the evidence of the defendant: the land, when conveyed to the plaintiffs, was worth several hundred dollars more than the sum due upon the mortgages. It is quite improbable that the defendant understood he was paying his debt by making an absolute surrender of property considerably exceeding in value its amount. But what is still more significant is that the plaintiffs, in the contract which they gave, have caused a provision to be inserted giving them a lien on such crops as defendants may raise upon the land, and contemplating a continuance of defendant's liability to them as a debtor even though the contract snould oe forfeited.

If, upon the face of the papers examined in the light of surrounding facts, there were any doubt of the intent, the law, taking notice of the advantage the creditor must always have over his debtor whose property he holds in mortgage, would give the debtor the benefit of the doubt, and hold his equity of redemption to be still existing.  *Odell*

*v. Montross* 68 N. Y. 499; *Trucks v. Lindsey* 18 Iowa 504; *Montgomery v. Spect* 55 Cal. 359. But there is no such doubt in this case. It is entirely clear that the plaintiffs have simply given up certain papers which secured debts, and have taken a new paper for the payment of the same amount, and in the last paper, as much as in the first, they are creditors of defendant, holding securities from him and his absolute promise to pay what is owing them. *Peterson v. Clark* 15 Johns. 205; *Odell v. Montross* 68 N. Y. 399; *Pardee v. Treat* 82 N. Y. 385; *Colwell v. Woods* 3 Watts 188; *Reitenbaugh v. Ludwick* 31 Penn. St. 131; *McLaughlin v. Shepherd* 32 Me. 143; *Taylor v. Weld* 5 Mass. 109; *Nugent v. Riley* 1 Met. 117; *Crassen v. Swoveland* 22 Ind. 427; *Steel v. Black* 3 Jones (N. C.) Eq. 427; *Marshall v. Stewart* 17 Ohio 357; *Davis v. Hemenway* 27 Vt. 589; *Graham v. Stevens* 34 Vt. 166; *Caruthers v. Hunt* 18 Iowa 576; *Scott v. Meewhirter* 49 Iowa 487; *Howe v. Carpenter* 49 Wis. 697; *Clark v. Finlon* 90 Ill. 245.

But it is said that the decisions of this Court recognize the right of the grantee by absolute deed to possession of the land even when the deed is given by way of security. There is certainly a dictum to that effect in *Wetherbee v. Green* 22 Mich. 311, 321, and decisions in *Bennett v. Robinson* 27 Mich. 26 and *Jeffery v. Hursh* 42 Mich. 452. But those were cases in which the party claiming against the deed was entitled to the rights of a mortgagor in equity only. In none of them had the mortgagee given any writing in the nature of a defeasance, and in none could the debtor's right be shown except by proving an oral understanding. Nothing of the sort is necessary here, nor is any oral understanding relied upon. The papers show that the relation of mortgagor and mortgagee continues, and the contract of sale is nothing but a defeasance, and the mortgagor is in possession under the permission given by it. It is of no moment that the conveyance and defeasance are in two instruments, instead of being incorporated in one as is customary; the old method was

always to have two, and it is just as admissible now as it ever was.

The judgment must be reversed with costs, and a new trial ordered.

The other Justices concurred.