## WILLIAMS *v.* BOLT.

1. MORTGAGES — REDEMPTION — DEED AS SECURITY — DEBTOR AND
   CREDITOR—ACCOUNTING.

   Complainant borrowed money from defendant, giving him a
   deed that defendant agreed to hold without recording as
   security for the debt, which was later increased by an
   additional loan on the same security, amounting to about
   one-third the value of the property. Defendant recorded
   said deed without complainant's knowledge. Becoming in-
   debted to third parties, who obtained a judgment against
   complainant and levied execution upon the property in ques-
   tion, complainant, having in the meantime paid his indebt-
   edness to defendant and received back his deed, without
   obtaining any quitclaim from defendant, borrowed a further
   sum from defendant, and redelivered the deed as security.
   Said judgment creditors sold the property levied upon,
   and bid it in for such judgment. For complainant's benefit
   and with his approval, defendant filed a bill to set aside the
   levy, claiming to own the lands, but before the final de-
   termination of the proceedings defendant purchased the in-
   terest of said judgment creditors, whose title had become
   absolute. He subsequently gave a statement to complainant
   showing the amount he claimed, including the amount of the
   last loan, interest, taxes and the sum paid to such judgment
   creditors, and admitted having received money from complain-
   ant on the indebtedness, also giving him an option to repur-
   chase the premises. *Held,* that the relation of mortgagor and
   mortgagee had never terminated and complainant was en-
   titled to redeem.

2. SAME—EQUITY—DEEDS.

   In the case of a transaction which one of the parties claims to
   have amounted to a mortgage, equity will, in case of doubt
   as to the actual intent of the parties, be inclined to give the
   debtor the benefit of the doubt and preserve to him his
   equity of redemption.

Appeal from Muskegon; Sessions, J. Submitted April
12, 1912. (Docket No. 93.) Decided May 31, 1912.

Bill by John Williams against Orin T. Bolt and others for an accounting and redemption from a deed given as security for a loan. From a decree for defendants, complainant appeals. Reversed.

*Turner & Turner,* for complainant.

*Philip W. Kniskern* and *Walter I. Lillie (Charles B. Cross,* of counsel), for defendants.

Stone, J. The bill of complaint in this cause was filed to obtain an accounting from the defendant Orin T. Bolt of all moneys received by him either for rent of lot 5, block 47, of the city of Muskegon, or the money paid to him by complainant on account of indebtedness, as well as on account of any moneys expended by said defendant for maintaining and repairing the buildings on said lot, and the insurance and taxes thereon, etc.; also that the deed from complainant and wife to said defendant, bearing date December 30, 1901, and recorded October 25, 1902, in Liber 115 of Deeds, on page 196, in the office of the register of deeds for Muskegon county, may be declared to have been, and to be, a mortgage, or a mortgage lien on said lot, and that, upon complainant's paying to said defendant Bolt any indebtedness or liens found to be due him, said defendant may be decreed to release and forever quitclaim to complainant all interests and claims that he may have in said described premises derived under said deed, or under a deed from Samuel Woolner, Jr., and wife and Alfred C. Woolner to said defendant Bolt, bearing date June 8, 1905, and recorded in the office of said register of deeds on July 17, 1905, in Liber 35 of Deeds, on page 410; and that the said defendants Libby M. Bolt, Alice I. Ragen, John A. J. Ragen, Mary Ragen, Mary Ragen Gordon, and Walter I. Lillie may severally be decreed to release and quitclaim to complainant all interest which they, or any of them, may have or claim in and to said property by virtue of their respective deeds,

or in any other manner from or through the said defendant Orin T. Bolt.

It is the claim of complainant by his bill of complaint, and the evidence offered by him tends to show: That he has been the owner of said premises since 1870, and has occupied the same, except as hereinafter stated, and that there are upon said premises valuable buildings, and that said property was on December 31, 1901, worth the sum of $4,000; that at or about the last-named date complainant borrowed from defendant Orin T. Bolt the sum of $900 without any definite arrangement as to the date of the repayment of the same, and that, in order to secure said defendant for said loan, complainant and his wife executed and delivered to said Bolt a warranty deed of said premises, which was taken and held by said defendant solely for security for said loan, and for no other purpose; that said defendant Bolt agreed that he would not record said deed, but that, in violation of said agreement, he at the date above stated caused the same to be recorded as a deed, which was unknown to complainant; that on or about the 1st day of May, 1902, complainant borrowed the further sum of $500 from said defendant Orin T. Bolt, and that he executed and delivered to said Bolt at said time his check on the National Lumberman's Bank of the city of Muskegon, made payable to the order of the county treasurer, for said sum, which check was delivered to and accepted by said defendant Bolt as evidence of the loan of the $500 aforesaid; that complainant at the time of the delivering of said check was lawfully indebted to defendant Bolt in the sum of $1,400 together with the interest on said $900 from the 31st day of December, 1901; that at the time of borrowing said $500 and giving said check, it was expressly agreed between said parties that the aforesaid deed so delivered to said Bolt should be held by him as security also for the repayment of said $500; that some time prior to the 3d day of January, 1903, complainant paid to said defendant Bolt the entire amount of said indebtedness of $1,400, together with the interest thereon,

and that, upon paying the same, the said defendant Orin T. Bolt delivered to complainant the deed so held by him as security for the payment of said sums of money; that complainant accepted the deed, but did not notice at the time, nor until a long time thereafter, that the same had been recorded, and complainant supposed that, inasmuch as the deed had at all times been considered as a mortgage, a reconveyance to complainant was not necessary from said Orin T. Bolt; that in the month of February, 1903, complainant was indebted to the firm of I. Trager & Co. upon a judgment rendered against him in the circuit court of said county in the sum of $1,112.50 and on or about the 12th day of February, 1903, for the purpose of obtaining means to satisfy said judgment, he borrowed of defendant Orin T. Bolt the sum of $1,100, which was then and there agreed to be repaid to said Bolt as soon as complainant was able to do so, but that no particular time of payment was specified, and that for the purpose of securing said Bolt for the repayment of said $1,100 complainant handed and delivered again to said Bolt the deed of said premises of date December 30, 1901, complainant not having observed at the time that said deed had been recorded; that said defendant Orin T. Bolt then and there accepted the same and held the same as security for said loan of $1,100, and for no other purpose, and that said defendant has ever since continued to hold the same as such security; that said sum of $1,100, together with a small sum added thereto by complainant, was paid on February 12, 1903, in satisfaction of the judgment of said I. Trager & Co.; that on December 10, 1904, the defendant Orin T. Bolt, without the knowledge or consent of complainant, executed and delivered a warranty deed of said lot to the defendants Libby M. Bolt and Ragen, hereinbefore named; that the same was in effect a mortgage, and that said defendants were all fully aware of the conditions under which said Orin T. Bolt held the paper title to said property, and that defendant Orin T. Bolt admits that said purported conveyance was intended as a mortgage;

that upon the 2d day of April, 1906, without the knowledge or consent of complainant, said Orin T. Bolt and his wife executed and delivered to defendant Walter I. Lillie a warranty deed, which is admitted to be a mortgage; that Walter I. Lillie fully understood the relations existing between complainant and the defendant Orin T. Bolt at the time he received said deed; that the money so borrowed, as set out above, by said complainant of Orin T. Bolt has been repaid by complainant, except it may be some small sum for taxes or improvements upon said property; the complainant offering to pay any sum found due the said Orin T. Bolt upon an accounting.

It further appears: That on December, 22, 1902, a judgment was rendered in the circuit court of said county against the said complainant as defendant, and in favor of Samuel Woolner, Jr., and Alfred C. Woolner, copartners under the firm name of Woolner & Co., of Peoria, Ill., for the sum of $1,189.56, together with costs of suit; that execution was issued upon said judgment against this complainant as defendant, and on January 14, 1903, a levy of said execution was made and perfected upon the premises in question; that a sale under said execution was made on November 11, 1903, and said property was bid in by said Woolners; that in the month of September, 1903, the said defendant Orin T. Bolt, as complainant, filed a sworn bill in the circuit court for the county of Muskegon, in chancery, against said Woolners to set aside said levy, in which bill said Orin T. Bolt represented to the court that he was the owner in fee of the property involved in this suit; that subsequently, and on the 8th day of June, 1905, the said Orin T. Bolt, in consideration of the sum of $211.83 actually paid, received in his own name a quitclaim deed from the said Samuel Woolner, Jr., and wife and Alfred C. Woolner, which was duly recorded as above stated; that said Bolt now claims to own said premises by virtue of said deed. On June 17, 1905, and after receiving the deed last above mentioned, the said Orin T. Bolt gave to complainant the following statement:

"Statement. Muskegon, Michigan, June 17, 1905. Mr. O. T. Bolt to John Williams, Dr. [That is the way it reads.] Principal $1,162.50; interest $208.32; taxes $417.35; Lovelace $211.83."

In his testimony the defendant Orin T. Bolt testified relative to said statement as follows with reference to the Lovelace item; it appearing that Mr. Lovelace was the attorney for the Woolners in the judgment matter:

"*Q.* That is what you paid for that deed?

"*A.* Yes, sir.

"*Q.* You figured that all in, and gave it to Mr. Williams as the amount due you, didn't you?

"*A.* I presume so; yes.

"*Q.* Well, you did, didn't you?

"*A.* I probably gave it to him as the amount that he would have to pay in order to clear up the property, and get a deed from me if he wanted it.

"*Q.* That $211.83 is what you paid for the deed?

"*A.* Two hundred eleven dollars and eighty-three cents is what I paid for the Woolner deed; yes, sir.

"*Q.* He was asking you then how much he was indebted to you, wasn't he, when you made this statement?

"*A.* Probably was asking me how much it would cost him to buy the property and clear up the taxes. I made those figures for Mr. Williams' information.

"*Q.* There wasn't any option then?

"*A.* Why, no; June 17, 1905.

"*Q.* That item you figured, amount due $417.35, hadn't ever been paid?

"*A.* No; those were back taxes. Those were the taxes of 1902, 1903, and 1904.

"*Q.* During the time you made these figures, you didn't mention anything about any mortgage being on the premises that you gave before that date?

"*A.* No, sir.

"*Q.* Kept him in absolute ignorance of that, did you?

"*A.* Yes, sir.

"*Q.* Now, you were in for fighting the Woolner claim, wasn't you?

"*A.* Williams was.

"*Q.* You were the man that filed the bill, weren't you, to fight the claim?

"*A.* Really, at his request.

"*Q.* Didn't Williams tell you to go and pay Woolner?

"*A*. No, Mr. Williams desired, as a matter of fact, to take the stand, and testify that my title was absolute. I afterwards considered that that was not a very good deal and went up and settled for what it cost me to quit. That is the inside of it.

"*Q*. That was after the bill was filed?

"*A*. Yes, sir.

"*Q*. Mr. Williams was not sworn, was he?

"*A*. Not that I know of.

"*Q*. Didn't he tell you to go and settle the Woolner claim, that he owed so much?

"*A*. No, sir.

"*Q*. Wasn't it on that, that you did it?

"*A*. No, sir; I never bought the Woolner claim until after redemption had expired.

"*Q*. Didn't you have $130 of Mr. Williams' money about that time you negotiated for this Woolner deed that he overpaid you on licenses?

"*A*. No, sir; I did not.

"*Q*. But you did receive at the hands of Mr. Williams $130—did receive it at the end of the year?

"*A*. Yes, sir. And credited it to him on account December 31, 1904."

It further appears that on or about the 11th day of November, 1905, said Orin T. Bolt prepared and caused to be delivered to complainant an option for the repurchase of said property within 12 months—

" For $1,632.65, with interest from June 17, 1905, at the rate of 7 per cent. per annum, together with such taxes or insurance premiums which I may hereafter be obliged to pay on account of said property, less the net rent which I may hereafter receive from said property. On payment or tender to me of said cash at any time within said period of 12 months I agree to execute and deliver to said John Williams or his heirs or assigns a good and sufficient conveyance for said premises."

It is the claim of the complainant that this option was not made or delivered in pursuance of any agreement or understanding between the parties; that complainant did not know the nature of the paper when it was handed to him by defendant Bolt, but claims that Bolt said it was a statement of their account. This claim of complainant is

denied by defendant Bolt, who claims that the option was made and delivered in pursuance of a full and complete understanding between the parties. It might be stated in this connection that the complainant claims and testified that defendant Bolt acted for him in obtaining the deed from the Woolners, that the attorney for the Woolners and Bolt had talked it over, and that Bolt was then owing the complainant $130 in an outside matter, and that Bolt had told the complainant the amount that Lovelace would accept for a deed. When asked if he knew that Bolt was to get a deed or pay the account, the complainant testified that he was to pay the account and get the judgment released, and that he did not ask Bolt in what form it was to come.

It is the claim of complainant that Bolt was acting as his agent in thus dealing with the Woolners, and by reason of his holding the deed as a mortgage, and recognizing the relation of mortgagor and mortgagee, in buying in this outstanding claim or title to the property, Bolt's relation to complainant was such that he could not claim the title in himself, and thereby cut off the complainant's right to redeem the property. It should be stated that there is much conflict in the evidence of these parties. The defendant Orin T. Bolt admits that he received the deed and held it as security for the moneys loaned to the complainant. He denies, both in his answer and testimony, that the original loan of $1,400 was ever paid by complainant. He also denies, or at least does not remember, that he ever made the loan of $1,100 claimed by complainant. In considering the relation between the parties, this difference is not important except as it bears on the credibility of the parties, and the amount due, because the defendant Bolt admits that he received the deed of December 30, 1901, as security for money loaned, and that he held it as security. He does claim, however, that at the time of obtaining the Woolner deed, the redemption period having expired, the title of complainant and the claim of said defendant had both become extinguished by

the sheriff's deed to the Woolners after the expiration of the redemption period, and that from the time he obtained the deed from the Woolners he became the owner of this property. We shall have occasion to inquire whether this position is consistent with his conduct and with the circumstances surrounding the matter. Upon the hearing the circuit judge dismissed the bill of complaint, and the complainant has appealed.

It is the claim of complainant that, applying the rule "once a mortgage always a mortgage," the defendant could not in the manner indicated acquire the title as against him. It will be noted that Bolt admits that at the time he filed the bill of complaint against the Woolners in September, 1903 (therein claiming that he was the absolute owner of the premises), he was, in fact, the holder of a mortgage only. He did not press that suit, but allowed the sale on execution to be made, and the redemption to expire, before he took his deed from the Woolners. If he was acting for complainant when he filed the bill, as he testified he was, will equity permit him thus to change his relation from that of a mortgagee to that of an owner? As between him and the complainant, was Bolt any the less a mortgagee, after the purchase from the Woolners, than he was before. Did not the relation of debtor and creditor still exist between them? The subsequent conduct of defendant Bolt should be noted, in view of the claimed ignorance of complainant as to the transaction relating to the Woolner deed. The statement of June 17, 1905, given by defendant Bolt to complainant, is significant. The deed from the Woolners to the said defendant bore date June 8, 1905. There is attached to the deed, however, a clerk's certificate dated at Peoria, Ill., June 16, 1905. It is only fair to say that at the date of the statement defendant Bolt understood all about the deed for he includes in the statement the amount paid for it, to wit, $211.83, which he testified was the consideration paid. We think that it can be said that at the time of making this statement defendant Bolt recognized the relation of mortgagor and mort-

gagee, and that in the buying in of the Woolner title he had simply added the amount paid to the former indebtedness, and treated the whole as an indebtedness secured by the mortgage. Not only may we say that the relation of debtor and creditor still existed between the parties, but by the testimony of the defendant Bolt it may well be urged that in buying in the Woolner title he was acting as the agent of the complainant. Had he been furnished with a part of the money by complainant, with which to make the purchase, the claim of complainant upon this point would be almost conclusive. This, however, is denied by defendant. About the time of the giving of the written option defendant Bolt seems to have got possession of most of the premises, and gave directions later to complainant about the rents.

We are impressed with the claim of complainant that, after obtaining the Woolner title, defendant Bolt, by his statement and conduct, still recognized the relation to be substantially the same as it had been before, which was confessedly that of mortgagor and mortgagee and debtor and creditor. The complainant's position is strengthened by his claim that he furnished a part of the consideration, and that he supposed that Bolt was simply to pay the Woolner claim and get the judgment released. It must be conceded that the complainant exhibited a woeful ignorance of business affairs. We should, however, look at the entire situation. The fact being admitted that Bolt took and held the deed of December 30, 1901, as a mortgage, and that in getting the deed from the Woolners he really acted for complainant, we should look at the transactions in the light of all the surrounding circumstances, and view the position occupied by the parties at the time, as they probably understood it. Applying this test, is there really any doubt that, when the statement of June 17th was made, defendant Bolt considered himself a creditor and mortgagee? We think not. If so, we see no reason for saying that he could arbitrarily change that

relation later, and thus subsequently cut off the right of redemption.

In *Ferris* v. *Wilcox*, 51 Mich. 105 (16 N. W. 252, 47 Am. Rep. 551), a mortgagor of land that was worth considerably more than the mortgage debt (as seems to be the case here) deeded it to the mortgagee and took back a contract of sale, which provided that, in case of default in payment, the party of the first part should be entitled to immediate possession, and should also have a lien on the crops. It was held that the deed and contract together should be construed as a mortgage, amounting only to a change in the form of security for a continuing liability. In that case Justice COOLEY said:

" If, upon the face of the papers, examined in the light of surrounding facts, there were any doubt of the intent, the law, taking notice of the advantage the creditor must always have over his debtor whose property he holds in mortgage, would give the debtor the benefit of the doubt, and hold his equity of redemption to be still existing."

See cases cited in the opinion.

If defendant Bolt was acting in the interest of, and on behalf of, complainant in buying in the Woolner title, then the reasoning applied by this court in *Backus* v. *Cowley*, 162 Mich. 585, 592 (127 N. W. 775, 778), applies, and the defendant is in no position to invoke the statute of frauds. As was there said by Justice MCALVAY:

" The relations between Mrs. Backus and defendant company relative to this transaction have been called fiduciary. Strictly speaking, they were not, but were such as required loyalty on the part of the agent, and a duty resting upon it to deal in good faith with its principal, and is one of the relations within the statute and recognized by the authorities cited."

See, also, *Kimball* v. *Ranney*, 122 Mich. 160 (80 N. W. 992, 46 L. R. A. 403, 80 Am. St. Rep. 548); *Walling* v. *Poulsen*, 160 Mich. 392 (125 N. W. 373). We are of opinion that the learned circuit judge erred in dismissing the bill of complaint, and that complainant is entitled to

an accounting, and that, upon payment to defendant Bolt of any sum of money found to be due him from complainant, the latter is entitled to a reconveyance of the property, as against all of the defendants, as prayed for in the bill of complaint.

The decree of the circuit court is reversed, with costs, and the case will be remanded to the circuit court for an accounting between complainant and defendant Orin T. Bolt. In default of the immediate payment by complainant of any amount found due to the defendant Orin T. Bolt upon such accounting, the title to said premises shall thereupon stand confirmed in said defendant Orin T. Bolt, and the complainant shall thereupon be foreclosed from any interest therein.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.