B. MARCUS v. CHARLES C. HULL, individually and as the sole devisee and legatee under the last will and testament of L. B. Hull, deceased.

195 So. 170
Division B
Opinion Filed May 9, 1939
On Rehearing En Banc April 9, 1940

*Chester Ferguson and McKay, MacFarlane, Jackson & Ramsey,* for Appellant;

*S. S. Sandford* and *Stafford Caldwell,* for Appellee.

BROWN, J.—B. Marcus, plaintiff below, purchased real estate in Wildwood, Florida, during the year 1926, for the sum of $7,000.00. He erected thereon a two-story building of brick and steel. Immediately preceding the completion of the construction of the building, and on July 24, 1926, he secured a loan of $10,000.00 from Charles C. and L. B. Hull, trading as Hull Brothers, a co-partnership, and executed his promissory note evidencing said indebtedness. To secure same he and his wife executed a mortgage on the premises covering the land and building thereon.

On August 19, 1929, the mortgagors executed a deed absolute in form to the mortgagees, which was duly recorded, covering the property described in the mortgage. There-

after the mortgagees were allowed to manage and control the property and collect the rents and profits therefrom. On October 18, 1935, Marcus filed his bill of complaint praying that the court would decree that the deed absolute in form be adjudged to be a mortgage only; that an accounting be had between the parties to ascertain the amount of money still due the defendant on the mortgage indebtedness after a credit of rents, issues and profits realized from the operation and rental of the building, and that the plaintiff be allowed a reasonable time, to be fixed by the court, within which to pay the mortgage indebtedness found to be due; that all instruments necessary to cause a proper discharge and satisfaction of the mortgage be executed by the defendant, as well as the execution of such other instruments as were necessary for record purposes to vest a fee simple title to the property in the plaintiff.

The defendant, Charles C. Hull, in his answer alleged that the deed was executed in full and complete satisfaction and payment of the mortgage indebtedness, that plaintiff had no interest in said property and was therefore not entitled to any accounting for the rents, issues and profits therefrom.

Upon petition of plaintiff a special master was appoin'ec to take and report the testimony in the cause. The report of testimony was filed and thereupon the lower court found the equities to be with defendant and dismissed the bill of complaint at the cost of plaintiff. From said final decree this appeal is taken.

The only question to be determined by this court is whether the lower court erred in holding that the testimony did not sustain plaintiff's contention that the deed, executed and delivered by him to defendant, was in fact only a mortgage and not an absolute conveyance of title.

If there is substantial evidence in the record to support

a decree entered by the court below, it will not be disturbed on appeal by this court, for the lower court's findings of fact are entitled to the same weight and consideration on appeal as the verdict of a jury. Schonfeld v. Engler, 119 Fla. 138, 160 So. 879; Boyte v. Stoer, 114 Fla. 395, 153 So. 845; Fickling Properties v. Smith, 123 Fla. 556, 167 So. 42; Dolan Properties v. Vonnegut, 117 Fla. 830, 158 So. 457.

Yet, where the evidence is so clear, certain and convincing that no other conclusion than that the lower court erred in its ruling can be reasonably reached therefrom, this court has no hesitancy in reversing the lower court's decree. Lucas v. Wade, 43 Fla. 419, 31 So. 231; Jones v. Jones, 119 Fla. 824, 161 So. 836.

The testimony in this cause was taken before a special master without authority to make findings and state conclusions and recommendations. The lower court did not have an opportunity to see and hear the witnesses, and consequently its decree is not on a par with the verdict of a jury. However, its conclusion will not be disturbed unless it clearly appears to be erroneous. Bowery v. Babbitt, 99 Fla. 1151, 128 So. 801; Tatum Bros. Real Estate Co. v. Osborn, 79 Fla. 130, 83 So. 703; Gollnick v. Barker, 94 Fla. 885, 114 So. 527; Lucas v. Wade, *supra.*

This case necessarily brings for the consideration of this court the application of Section 5724, Compiled General Laws 1927, which reads as follows:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to

the same regulations, restraints and forms as are prescribed in relation to mortgages. (Jan. 30, 1838, Sec. 1, Ch. 525, Jan. 8, 1853, Sec. 1.)."

This Court has construed the above statute many times and in effect has held that an instrument given for the purpose or with the intention of securing the payment of money is a mortgage, Equitable Building & Loan Assn. v. King, 48 Fla. 252, 37 So. 181; Bartlett v. De Wilson, 52 Fla. 497, 42 So. 189; Elliott v. Connor, 63 Fla. 408, 58 So. 241; Tilman v. Niemira, 113 Fla. 774, 152 So. 863, and if an instrument is a mortgage when executed its character does not change, for once a mortgaage always a mortgage is a maxim of law. Connor v. Connor, 59 Fla. 467, 52 So. 727; Elliot ·v. Connor, *supra;* Pittman v. Milton, 69 Fla. 304, 68 So. 658; Stovall v. Stokes, 94 Fla. 717, 115 So. 828.

Thus, it only becomes necessary for us to ascertain from the evidence *the intention of the parties at the time the deed absolute in form was executed and delivered* to defendant. In doing so the Court may take into consideration the paper itself, or the instrument in connection with contemporaneous writings or agreements concerning the subject matter, or by the aid of extraneous evidence which will determine the decision of the question. The attitude of the parties relative to the conveyance after its execution may also be considered. Holmberg v. Hardee, 90 Fla. 787, 108 So. 211; Stovall v. Stokes, *supra;* Brumick v. Morris, 131 Fla. 46, 178 So. 564.

The testimony in this cause shows that the money, evidenced by the mortgage note and the mortgage, was obtained from L. B. Hull and C. C. Hull, a co-partnership trading as Hull Brothers, that the execution and delivery of the deed, and all attendant circumstances, were actually consummated by and between L. B. Hull and plaintiff B. Marcus, and that after the execution and delivery of the

deed L. B. Hull continued in the active management of the property until his death in 1932; that practically all of the correspondence passing between the Hulls and Marcus was written by the said L. B. Hull, and it was only after his death that C. C. Hull, defendant herein, took over the active management of the property, the collection of the rents, and had further dealings with Marcus concerning the property.

During November, 1928, L. B. Hull wrote Marcus a letter in which he stated that over $700.00 in taxes were due besides the interest and that the Hulls would have to do something to protect themselves. Hull further stated that if Marcus would deed the mortgagees the front lots on which the building was constructed he (Marcus)· could have the back lots and could buy the front lots back from the Hulls at what they had in it with interest for a reasonable length of time. Marcus testified that he turned the front lots over to L. B. Hull subject to the above letter.

On July 10, 1929, approximately one month prior to the execution of the deed, a contract was signed and sealed by Charles C. and L. B. Hull, the substance of which recited the outstanding indebtedness, the transfer of the property, and the right of plaintiff, Marcus, at any time within one year after the execution thereof, to redeem the property by payment of the mortgage indebtedness. It is true that both parties, that is, Marcus and Charles C. Hull, testified that this contract was not the basis of the deed given the Hulls, but it is a circumstance which may be considered by this Court in arriving at a true ascertainment of the intention of the parties at the time of the execution of the deed.

On August 19, 1929, Marcus executed a deed absolute in form, subject to the mortgage and taxes, to Charles C. and L. B. Hull. The Hulls then reconveyed the back lots

to Marcus, who subsequently mortgaged them to secure an indebtedness of $225.00 due and owing the State Bank & Trust Company of Leesburg, Florida. The original notes were and are still retained by Hull. No satisfaction of the mortgage has ever been placed of record, although one was signed by the Hulls on August 27, 1929, and same was acknowledged on October 19, 1929. The satisfaction is also still in the possession of Hull.

An unbroken chain of correspondence was exchanged between the Hulls and Marcus during the year 1929, after the execution of the deed, to the year 1934, inclusive. On April 14, 1931, L. B. Hull wrote Marcus to the effect that he, Hull, had received Marcus' letter, and he (Hull) did not known how to get the figures Marcus wanted without a lot of trouble, as the interest had to be figured up, but for Marcus to see if he could get the money up and that he (Hull) would get the figures up and have them when he came to Wildwood.

On May 2, 1932, L. B. Hull in a letter stated that if Marcus could buy the place he (Hull) would give him some "discount" on it. In a letter dated June, 1932, L. B. Hull sent Marcus $15.00 and told him that was all he could let him have at that time, but he (Hull) wanted to help Marcus and if he saw any way to let Marcus have more he would do it. On May 29, 1932, L. B. Hull wrote Marcus that he hoped that there was some way Marcus could buy the building because he needed the cash badly and would "discount" it.

L. B. Hull died August 12, 1932, and Charles C. Hull, defendant herein, took over the active management of the property. In January, 1934, Charles Hull wrote two letters to Marcus suggesting that Marcus come to Plant City, as they could handle the matter better there. On February 8,

1934, the Home Own'ers' Loan Corporation wrote Marcus
the following letter:

"We have received and filed your application in the sum
of $15,000.00. You have not attached your Mortgagee
Consent to take bonds. Even if you could obtain it, the
limit on a bond application is $14,000.00, and if Mr. Hull
will not take bonds, the limit is $8,000.00 in cash. As your
application stands, therefore, it is ineligible.

"We are enclosing a Mortgagee Consent Blank, and a
Cash Loan Questionnaire.

"Please give full information relative to the date of the
mortgage, the date due, and the amount in arrears, and
also show what attempts you have made to re-finance the
same.

"It also appears that this property is not now occupied
by you as your home. Where are you living now, and how
long has it been since you occupied the property? When
was the deed to Mr. Hull given, and when was the agree-
ment made by him to deed the property back to you, and
what were the terms made at that time? Please give us
full information on these points so that we may give your
application further consideration."

On February 16, 1934, Hull wrote Marcus to the effect
that he wonders if Marcus could not make some other ar-
rangement, as it looked like he (Hull) was going to have
to take too much loss on the property, that he (Hull) had
not been able to get the right kind of dope on the matter
and in the meantime he wanted Marcus to figure out some
other way.

After Hull claimed ownership, Marcus wrote him on
May 14, 1934, demanding an accounting for the rents and
profits from the premises. No accounting was ever given
and no answer was made by Hull. However, Hull admits

he has a record of all the rents collected and the amounts expended for maintenance and taxes on the property.

Marcus testified that he had paid only one thousand dollars on the indebtedness prior to the execution of the deed; that he didn't know whether same was applied on the principal or on the interest; that the original note has never been returned by Hull; that no satisfaction of the mortgage or original note has ever been given him by Hull; that the deed was given to the Hulls for the purpose of further securing the indebtedness and enabling them to collect the rents and profits from the building covered by the mortgage and the deed; that at the time he gave the Hulls the deed they deeded the vacant lot back to him; that since then the Hulls have collected the rents on the building.

Arthur Capanes testified that L. B. Hull said "he never expected to take that property away from Mr. Marcus and that when he got his money he would turn it back to him." H. M. Dismukes, who was operating a store in the building involved herein, stated that "Mr. B. Marcus and Mr. L. B. Hull came in the store and called me to one side and Mr. Marcus told me that he had sold the property to Hull Brothers, or L. B. Hull, and I was to pay the rent to Mr. Hull from that time on." E. G. Wiggins, who witnessed the unrecorded satisfaction, stated that L. B. Hull said he had bought the property and had deeded Marcus the back lot as part of the transfer.

Charles C. Hull testified that two propositions were made to Marcus: the first was for him to deed the Hulls all the property and he would be given a year to redeem it, and the other was for him to deed the Hulls all the property and they would deed him back the back lot in full settlement; that Marcus accepted the latter proposition. On cross-examination Hull testified that his brother, L. B.

Hull, handled the collection of rents, payment of repairs and taxes on the property until his death; that under the terms of L. B. Hull's will Charles Hull received all and singular his property, real and personal. He also testified as follows concerning the execution of the deed by Marcus:

"Q. Did you handle that transaction or was it handled by Mr. L. B. Hull?

"A. When the deed was made?

"Q. Yes.

"A. I was away at the time.

"Q. The entire matter was handled by Mr. L. B. Hull?

"A. Yes, sir."

Thus it appears that the transaction concerning the execution and delivery of the deed was actually consummated by the deceased L. B. Hull and that defendant C. C. Hull was not in the city at the time the matter was actually closed.

The rule is well settled that where a conveyance of property is absolute on its face, the burden of showing that it was when executed intended to be a mortgage is upon the grantor. Elliott v. Connor, 63 Fla. 408, 58 So. 241; Mitchell v. Mason, 65 Fla. 208, 61 So. 579; Stovall v. Stokes, 94 Fla. 717, 115 So. 828; Howard v. Godspead, 101 Fla. 699, 135 So. 294; Brumick v. Morris, 131 Fla. 46, 178 So. 564. However, only a preponderance of evidence is required to establish that an absolute deed of mortgaged premises to a mortgagee is a mortgage, Stovall v. Stokes, *supra*, and in cases of doubt as to whether the parties intended the transaction to be an absolute conveyance or a mortgage the instrument will be held a mortgage. Connor v. Connor, 59 Fla. 467, 52 So. 727; Hull v. Burr, 58 Fla. 432, 50 So. 754; Stovall v. Stokes, *supra*.

The record shows that Marcus purchased the land involved herein for $7,000.00 and immediately thereafter began the construction of the building; that McCormack, a contractor, did some work on the building and was succeeded by Smith. Smith testified that he finished the building for $14,209.40. He also said the building is a two-story one, constructed of solid brick and steel, and the most desirable business location in Wildwood. The record shows that the building contained three stores on the first floor and 16 or 17 rooms on the second floor, and, at the time of the execution of the deed, the rentals amounted to $265 or $285 per month; also, at the time the deed was executed approximately $700.00 in taxes were due and Marcus was behind in his payments on the promissory note. Marcus had expended over $21,000.00 on the building and lots, placed the value at $40,000.00, and was receiving from $265 to $285 per month in rentals at the time of the transaction. Hull contends the property is not worth more than $14,000.00.

We are impressed by the claim of plaintiff Marcus that, after the execution of the deed, the deceased L. B. Hull by his correspondence with plaintiff still recognized the relation to be substantially the same as it had been before, which was confessedly that of mortgagor and mortgagee, debtor and creditor. If, upon the face of the papers examined in the light of surrounding facts, there was any doubt of the intent, the law, taking notice of the advantage the creditor must always have over his debtor on whose property he holds a mortgage, would give the debtor the benefit of the doubt, and hold his equity of redemption to be still existing. Ferris v. Wilcox, 51 Mich. 105, 16 N. W. 252, 47 Am. Rep. 551; Williams v. Bolt, 170 Mich. 517, 136 N. W. 472; 41 C. J. Mortgages, Sec. 124, p. 360; Connor v. Connor, *supra;* Stovall v. Stokes, *supra.*

The record also shows that a default in the payment of the debt had occurred, foreclosure was threatened, and a deed absolute in form was given the Hulls; that the Hulls · took possession of the land. The mortgage was never satisfied of record and the promissory notes evidencing the indebtedness are still retained by defendant. Under all the facts and circumstances we must hold the instrument to be a mortgage and subject to all rules and regulations governing same.

It may be contended that, under the provisions of Section 4372, Compiled General Laws, 1927, prohibiting an interested witness from testifying to transactions and communications with one at the time of such testimony deceased or insane, the evidence of plaintiff Marcus and others as to communications with L. B. Hull cannot be considered. The transactions and communications with L. B. Hull testified to by Marcus were also testified to by defendant C. C. Hull, thus making applicable the last proviso of said Section of the Statute, viz.:

" * * * but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf."

See also Booth v. Lenox, 45 Fla. 191, 34 So. 566.

For the reasons above set forth the decree is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### ON REHEARING

PER CURIAM.—A rehearing having been granted in this cause and the case having been further considered upon the record and upon briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that our original opinion in this cause be and it is hereby reaffirmed and adhered to on rehearing.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.