PER CURIAM.
Appellant, Warren G. Williams, Jr., sustained severe personal injuries as a result of a collision between the vehicle he was operating and a Seaboard train. His negligence action against the railroad proceeded to trial before a jury as a result of which plaintiff was awarded a judgment. However, that judgment was reversed and the cause remanded for a new trial.[1] Upon remand, the case was tried before the court without a jury resulting in a judgment for the railroad from which this appeal has been taken.
In the final judgment, the court found that “the greater weight of the evidence does not support the claim of the plaintiff”, and further found that “the greater weight of the evidence does support defendant’s defense of contributory negligence”. It is obvious that the trial court intended the latter finding to be an alternative one, that is to say, even if the court had found from the evidence that negligence on the part of the railroad was a legal cause of the collision, the outcome of the case would not be affected since the court found the plaintiff’s negligence to be a legal cause of the collision. Appellant’s sole point on appeal is the sufficiency of the evidence to sustain either of these findings.
Certain facts were without dispute. The collision occurred at a grade crossing within the city limits of West Palm Beach on July 29, 1963, at approximately S :05 a. m., at that point in predawn darkness where night begins to merge into daybreak. Appellant was operating a van-type milk truck used for retail delivery. The crossing, with which appellant was familiar, was marked only by a wooden crossbuck. Appellant was westbound, the train southbound. Municipal ordinances, in effect for a number of years prior to the collision, required the railroad to install automatic electric signal devices at the crossing, or *461 alternatively, to provide a manned crossing gate, and also established the lawful speed limit for trains over the crossing at 30 miles per hour.
Other facts were in dispute. There was a substantial conflict in the evidence relating to such matters as the condition and visibility of the crossing, the speed of the train at the time of the collision, whether the train’s headlight was operating and proper warning signals were given as the train approached the crossing, and the conduct of appellant as he approached and then entered the crossing. Appellant testified that he approached the crossing slowly and with caution because he knew it was uneven and bumpy and could cause the milk cartons to fall forward on him if he was not careful, that he stopped at the crossing, looked both ways and saw no train approaching, and then proceeded slowly forward onto the tracks. In support of his case he produced the expert opinion testimony of a consulting professional engineer and the eyewitness accounts of Mr. and Mrs. Carlton who lived not far from the crossing and who had glanced at the train immediately prior to the collision. Based upon a measurement of the braking distance and the known weight of the train and its cargo, the expert witness offered the opinion that the train was travelling between 40 and 50 miles per hour at the time of the collision. This estimate was supported by the testimony of the Carltons, who further testified that they heard no whistle nor bell, nor recalled seeing a headlight on the train, before they heard the sound of the collision. Conflicting with such evidence was the testimony of various members of the train crew who testified that as the train approached the crossing its speed was between 20 and 30 miles per hour, the headlight was burning, the whistle blowing, and the bell ringing, both of these audible signals having been commenced at the whistle post north of the crossing. Two members of the train crew, who were in the engine on the left side, testified that they were keeping a lookout ahead and had seen appellant’s truck slowly approaching the crossing from the east, that the truck’s interior light was on enabling them to see appellant in the truck, and that he appeared to be looking at something in the truck. One of these witnesses testified that appellant first stopped at the crossing and then proceeded slowly across in the train’s path, while the other testified that appellant did not stop but continued at the same slow pace until struck. Both described the immediate application of emergency brakes the m.oment it became apparent that appellant was moving into the train’s path.
Of course, determining the credibility of the witnesses and the weight to be given to their testimony is properly a function of the trier of fact.[2] When the sufficiency of the evidence is challenged on appeal, the appellate function is to determine if there is in the record substantial competent evidence which supports the finding made by the trier of fact[3] and in doing this the evidence in the record, together with all inferences reasonably and fairly to be drawn therefrom, must be considered in the light most favorable to the prevailing party.[4]
Applying these principles, the only un-contradicted evidence of negligence on the part of the railroad is its failure to comply with the municipal ordinance requiring installation of automatic electric signal devices at the crossing, or as an alternative, to *462 provide a manned crossing gate. However, if the court (as trier of fact) accepted as true the other evidence favorable to the defendant’s position, it could have concluded that the failure to have such signal device at the crossing was not a legal cause of the collision. Aside from the issue of the railroad’s negligence being a legal cause of the collision, we are led inescapably to the conclusion that the record contains substantial competent evidence, which (when viewed most favorably to the railroad as the prevailing party) supports the finding of contributory negligence on the part of appellant as a legal cause of the collision. It is an irrefutable physical fact that the train was approaching the crossing as appellant drove his vehicle slowly onto the tracks, and that the forward end of the train struck appellant’s vehicle broadside. If the trier of fact concluded that the train was being operated in the manner described by the train crew, ■ then appellant’s conduct in driving the vehicle directly into the path of the oncoming train could fairly be characterized by the trier of fact as negligence which was a legal cause of the collision.
 Appellant contends that any contributory negligence on his part should not bar a recovery because the railroad was guilty of wilful, wanton and reckless misconduct as to which contributory negligence is not a defense. This is a correct principle of law (see Johnson v. Rinesmith, Fla.App.1969, 238 So.2d 659, and authorities therein cited) but wholly inapplicable to. appellant’s case. This issue was not raised in the pleadings or presented to the trial court and in fact the case went to trial on the issue of defendant’s negligence and plaintiff’s contributory negligence. Furthermore, if the trier of fact concluded that plaintiff had not carried his burden to show the defendant guilty of ordinary negligence which was a legal cause of the collision, appellant necessarily failed to prove wilful, wanton and reckless misconduct on the part of the railroad.
Appellant having failed to carry his burden of demonstrating error, the judgment is affirmed.
Affirmed.
REED, C. J., and OWEN, J., concur.
McCAIN, DAVID L., Associate Judge, dissents, with opinion.

. Seaboard Airline Railroad Co. v. Williams, Fla.1967, 199 So.2d 469.

. Peterson v. Hancock, 1941, 146 Fla. 410, 1 So.2d 255, and cases cited therein; Povia v. Melvin, Fla.1953, 66 So.2d 494, and Commercial Credit Corporation v. Yarn, Fla.App.1959, 108 So.2d 638.

. Marcus v. Hull, 1939, 142 Fla. 306, 195 So. 170 and cases cited therein; Nelson v. State ex rel. Quigg, 1945, 156 Fla. 189, 23 So.2d 136, and cases cited therein; and Smith v. Biscayne Park Estates, Fla. 1949, 42 So.2d 442.

.Martin v. Tindell, Fla.1957, 98 So.2d 473; Commercial Credit Corporation v. Varn, Fla.App.1959, 108 So.2d 638; and Prince Michael Corp. v. Zucker, Fla.App. 1962, 147 So.2d 332.