**In re AIRLIFT INTERNATIONAL, INC., Debtor.**

**Bankruptcy No. 81–00846–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

Dec. 16, 1982.

Scott L. Baena, Miami, Fla., for Gatx Leasing Corp.

Timothy J. Norris, Miami, Fla., for the Trustee.

Robert Schatzman, Coral Gables, Fla., for the Creditor's Committee.

## ORDER ON APPLICATION FOR PAYMENT OF ADMINISTRATIVE CLAIM OF GATX LEASING CORP.

SIDNEY M. WEAVER, Bankruptcy Judge.

This matter came to be heard by the Court on the application of GATX Leasing Corp. ("GATX") for the payment of an administrative claim. William D. Seidle, the trustee for the Debtor's estate, resisted the application, as did the Creditors' Committee. The Court heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments and memoranda of counsel, and makes the following findings of fact and conclusions of law.

Prior to the commencement of this case, GATX sold to the Debtor, an air carrier certificated by the Civil Aeronautics Board, a DC8–63CF aircraft with installed and spare engines. The purchase price was $11,596,973.00, of which $9,220,000.00 was to be paid in 120 monthly installments of $130,951.16 consisting of principal and interest, as evidenced by a promissory note and secured by a duly perfected aircraft chattel mortgage. After the commencement of the case and prior to the appointment of Chapter 11 co-trustees, GATX and the Debtor entered into a stipulation pursuant to 11 U.S.C. § 1110 which provided that the Debtor would pay the monthly installments under the note and chattel mortgage in order to maintain possession of the aircraft. On November 9, 1981, this Court appointed co-trustees for the Debtor's estate, one of which since has resigned. The co-trustees did not make the payment due on November 26, 1981, and the aircraft was surrendered to GATX on December 7, 1981. GATX subsequently filed its application re-

questing payment as an administrative obligation of the sum of $178,966.59 (This sum represents the installment due on November 26, 1981, plus a proration of the next installment over the period from November 26 to December 7, 1981.).

Section 1110 of the Bankruptcy Code, 11 U.S.C. § 1110, is an exception to the automatic stay of 11 U.S.C. § 362 which provides protection to a narrow class of creditors in a Chapter 11 case. In the context of this case, it applies to (1) the holder of a purchase money equipment security interest or lessor or conditional vendor of (2) aircraft, aircraft engines, propellers, appliances or spare parts (as defined in the Federal Aviation Act of 1958) (3) granted by, leased to, or conditionally sold to, a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board. It provides:

> The right [of the creditor] . . . to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—
>
> (1) before 60 days after the date of the order for relief under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after such date under such security agreement, lease, or conditional sale contract, as the case may be; and
>
> (2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease, or conditional sale contract, as the case may be—
>
> (A) that occurred before such date is cured before the expiration of such 60-day period; and
>
> (B) that occurs after such date is cured before the later of—
>
> (i) 30 days after the date of such default; and

> (ii) the expiration of such 60-day period.

Thus, a debtor has the protection of the automatic stay for sixty days after the order for relief, in order to arrange to cure defaults and agree to perform obligations that subsequently become due. If the debtor does cure defaults and agrees to perform, that performance and agreement is not the assumption of an executory contract or lease, which remains subject to the requirements of 11 U.S.C. § 365. *See H.R.Rep. No. 95–595,* 95th Cong., 1st Sess. 405, U.S. Code Cong. & Admin.News, p. 5787; 124 *Cong.Rec.* H11,102 (daily ed. Sept. 28, 1978).

GATX, in its application and in its memorandum of law, has insisted that the § 1110 stipulation gives it the right to receive the monthly installment payment prorated over the time until surrender of possession and cites *Collier's* discussion of 11 U.S.C. § 1168, a section parallel to § 1110 which covers railroad rolling stock in railroad reorganization cases. *See* 5 *Collier on Bankruptcy* ¶ 1168.01 (15th ed. rev. 1982), which states, without citation to any authority:

> An interesting question arises as to the status of any claims based on a default in payment to the secured party after the trustee has agreed to perform the debtor's obligation but before the financing arrangement is assumed. Is the claim for the defaulted payment an administrative expense? Although the trustee had not yet assumed the financing arrangement, the trustee did agree to make the payments and the obligation was incurred by the trustee in the course of operating the debtor's business. The better view is that claim for the missed payment resulting from actual use of the collateral is an administrative expense, but that claims for payments due only as the result of acceleration by reason of a breach of contract are general unsecured claims.

Alternatively, GATX has urged that it is entitled to the sum requested because the estate had the aircraft available for use and that it is entitled to an award pursuant to 11 U.S.C. § 507(b) under the theory that it was entitled to adequate protection which it did not receive in fact.

The Trustee has responded that the § 1110 stipulation was not the assumption of the chattel mortgage and related loan agreement and thus its breach does not give a right to damages with administrative priority, that any obligation to pay GATX on a use basis is improper because GATX is a mortgagee and not a lessor, and finally that GATX, if entitled to any payment, should receive a payment only for the reasonable value of the actual use of the aircraft during the time in question.

While the memoranda submitted by the parties were helpful, they did not cite any authority on point in the application of 11 U.S.C. § 1110, and this Court independently has been unable to locate any. Accordingly, this Court will attempt to apply § 1110 to the facts presented and fashion an appropriate remedy.

First, the legislative history of § 1110 refutes the contention that GATX should receive the stipulated sum under a breach of contract theory. If Congress had intended to require a debtor to assume the obligation within the sixty-day period, it would have said so. It did not, and the discussion in the Congressional Record supports that conclusion. *See* 124 *Cong.Rec.* H11,102 (daily ed. Sept. 28, 1978). Furthermore, the § 1110 stipulation between GATX and the Debtor provided that, upon default, the Debtor would surrender the aircraft and provided elsewhere that GATX would not exercise its rights under § 1110 so long as the Debtor made the installment payments. The Debtor did not agree in the stipulation to pay the installment in all events, but only to pay in order to retain possession of the aircraft. Therefore, cases such as *In re Philadelphia Athletic Club, Inc.,* 17 B.R. 345 (Bkrtcy.E.D.Pa.1982), which holds that a court-approved stipulation between a mortgagee and a debtor in possession is binding upon the trustee, are not dispositive.

GATX's argument that 11 U.S.C. § 507(b) entitles it to receive the prorated installment payment fails to overcome one basic hurdle. Section 507(b) gives priority over other administrative claims to the extent that adequate protection provided by a debtor proves to be inadequate. But GATX has failed to introduce any evidence that it was not adequately protected, such as evidence that the value of the collateral decreased after the stipulation was executed and was insufficient to satisfy the claim. (The Trustee did not offer evidence to the contrary, such as that the value of the collateral was greater than the debt due GATX.)

GATX also has urged that it is entitled to payment by virtue of the Debtor's and Co-Trustees' possession and use of the aircraft. The Trustee's response is that such an argument might be appropriate if GATX were an equipment lessor but not since GATX instead is a chattel mortgagee. The Trustee correctly notes that a mortgage is "an instrument given for the purpose or with the intention of securing the payment of money . . .", citing *Marcus v. Hull,* 142 Fla. 306, 195 So. 170, 192 (1940), and that it is a lease (rather than a mortgage) which gives rise to an obligation for the use and possession of property, citing *Undercofler v. Whiteway Neon Ad, Inc.,* 114 Ga.App. 644, 152 S.E.2d 616 (1966). No cases have been cited to the Court which hold that a *mortgagee* is entitled to payment simply for the use or possession of its collateral by a debtor or trustee. (Of course, any number of decisions require such payments if necessary to provide adequate protection of the mortgagee's interest.) However, 11 U.S.C. § 1110 gives the equipment mortgagee the right to possession unless the debtor or trustee cures defaults and agrees to perform future obligations. Thus, but for the § 1110 stipulation, GATX would have been entitled to the aircraft. By their failure to perform as agreed in the § 1110 stipulation, the Co-Trustees resurrected GATX's suspended right to possession, although the Co-Trustees did have a thirty-day grace period to cure their failure to perform. *See* § 1110(a)(2)(B)(i). While it is improper to allow an administrative claim under § 507(b) for the insufficiency of adequate protection payments without proof of that insufficiency, it appears inequitable to this

Court to permit a trustee to have used collateral to which the mortgagee is entitled to possession but for § 1110 when the trustee fails to perform as agreed and as required by § 1110, without requiring the trustee to pay the reasonable value for his use of the collateral. This conclusion prevents the debtor's estate from being unjustly enriched without providing a windfall to the mortgagee which has repossessed its collateral.*

Only the Trustee presented evidence on the reasonable value of the actual use of the aircraft. This Court finds that, for the purpose of allocating costs, an aircraft such as the one involved here is used an average of 260 block hours per month. At the rate set forth in GATX's application ($130,951.16 per month), the allocated cost for the aircraft's use is $503.66 per block hour. The actual use of the aircraft during the relevant time period amounted to 17.07 block hours. From these facts, this Court concludes that the reasonable value for the actual use of the aircraft is $8,597.48.

Accordingly, it is

ORDERED that the application of GATX Leasing Corp. for the payment of an administrative claim is allowed in the sum of $8,597.48.

* This Court is not presented here with the issue of whether a fully secured equipment mortgagee would be entitled to payments for use of the collateral when there is a default under a § 1110 stipulation and subsequent repossession of the collateral by the mortgagee. Here, the Court is presented with no evidence of the value of the collateral but with evidence of the reasonable value for the actual use of the collateral.